BRENT J. NEWELL (State Bar No. 210312)
LAW OFFICES OF BRENT J. NEWELL
245 Kentucky Street, Suite A4
Petaluma, CA 94952
Telephone: (661) 586-3724
Email: brentjnewell@outlook.com

RICHARD T. DRURY (State Bar No. 163559)
VICTORIA YUNDT (State Bar No. 326186)
LOZEAU DRURY, LLP
1939 Harrison Street, Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Email: richard@lozeaudrury.com
        victoria@lozeaudrury.com

GRECIA OROZCO (State Bar No. 345881)
CENTER ON RACE, POVERTY & THE ENVIRONMENT
1012 Jefferson Street
Delano, CA 93215
Telephone: (562) 659-5314
Email: gorozco@crpe-ej.org

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| CENTRAL VALLEY AIR QUALITY COALITION, a fiscally sponsored project of Social and Environmental Entrepreneurs, Inc., COMMITTEE FOR A BETTER ARVIN, a nonprofit corporation, COMMITTEE FOR A BETTER SHAFTER, a nonprofit corporation, DELANO GUARDIANS, an unincorporated association, and SOCIAL AND ENVIRONMENTAL ENTREPRENEURS, INC., a nonprofit corporation,<br><br>      Plaintiffs,<br><br>   v.<br><br>SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT, and the GOVERNING BOARD OF THE SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT,<br><br>      Defendants. | Case No. 1:23-cv-00794-ADA-SKO<br><br>**PLATINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................... ii

**I. Introduction** .......................................................................................................... 1

**II. Standard of Review for Rule 12(b)(1) and 12(b)(6) Motion to Dismiss** ......... 2

**III. Statutory and Regulatory Background** .............................................................. 2

**IV. Statement of Facts** ............................................................................................. 6

**V. Summary of Claims** ............................................................................................ 7

**VI. Argument** ............................................................................................................ 8

    A.  The plain language of the Clean Air Act citizen suit provision provides a
       right of action against the Air District in its regulatory capacity ............................. 8

    B.  Ninth Circuit authority has for decades authorized citizen suits to hold states accountable
       to their obligations in their State Implementation Plans ....................................... 11

    C.  The Supreme Court and the Ninth Circuit have not interpreted section 304(a)(1) of
       the Clean Air Act to preclude citizen suits against state agencies acting as regulators ........ 14

    D.  *Sierra Club v. Korleski* is a wrongly decided Sixth Circuit outlier which this Court
       should decline to follow ....................................................................................... 16

       1.  The Court should interpret the Clean Air Act broadly to effectuate its remedial
          purpose ......................................................................................................... 17

       2.  *Bennett* does not control the analysis of whether the Clean Air Act citizen
          suit provision authorizes actions against a state agency acting as a regulator ............... 18

       3.  *Korleski* conflicts with several circuit courts of appeal, including the
          Ninth Circuit .................................................................................................. 18

**VII. CONCLUSION.** ................................................................................................ 19

1

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*American Lung Ass'n of New Jersey v. Kean*,
  871 F.2d 319 (3d. Cir. 1989) ................................................................................. 10, 19

*Animal Prot. Inst. v. Marten*,
  588 F.Supp.2d. 70 (D. Me. 2008) ................................................................................. 15

*Association of Irritated Residents v. EPA*,
  686 F.3d 668 (9th Cir. 2012) ......................................................................................... 3

*Association of Irritated Residents v. U.S. E.P.A.*,
  10 F.4th 937 (9th Cir. 2021) ............................................................................. 1, 12, 17

*Bayview Hunters Point Community Advocates v. Metropolitan Transp. Comm'n*,
  366 F.3d 692 (9th Cir. 2004) ................................................................................. Passim

*Bennett v. Spear*,
  520 U.S. 154 (1997) ............................................................................... 14, 15, 18

*Carrillo v. County of Los Angeles*,
  798 F.3d 1210 (9th Cir. 2015) ............................................................................. 16, 18

*City and County of San Francisco v. U.S. Dept. of Transp.*,
  796 F.3d 993 (9th Cir. 2015) ......................................................................... 9, 15, 17

*Coal. Against Columbus Center v. City of New York*,
  967 F.2d 764 (2d Cir. 1992) ......................................................................................... 19

*Committee for a Better Arvin v. U.S. E.P.A.*,
  786 F.3d 1169 (9th Cir. 2015) ............................................................................ Passim

*Communities for a Better Env't v. Cenco Refining Co.*,
  180 F.Supp.2d 1062 (C.D. Cal. 2001) ........................................................................ 19

*Conley v. Gibson*,
  355 U.S. 41 (1957) ......................................................................................................... 2

*Council of Commuter Orgs. v. Metro. Transp. Auth.*,
  683 F.2d 663 (2d Cir. 1982) ......................................................................................... 19

*Cousins v. Lockyer*,
  568 F.3d 1063 (9th Cir. 2009) ....................................................................................... 2

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Desert Citizens Against Pollution v. Bisson*,
  231 F.3d 1172 (9th Cir. 2000) ................................................................ 2

*Friends of the Earth v. Carey*,
  535 F.2d 165 (2nd Cir. 1976) ................................................... 3, 10, 18

*Garcia v. U.S.*,
  469 U.S. 70 (1984) ................................................................................ 9

*General Motors Corp. v. U.S.*,
  496 U.S. 530 (1990) .............................................................................. 3

*Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*,
  677 F.2d 1045 (9th Cir. 1993) .............................................................. 2

*League to Save Lake Tahoe, Inc. v. Trounday*,
  598 F.2d 1164 (9th Cir. 1979) ......................................................... 1, 13

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) .............................................................. 2

*McCarthy v. Thomas*,
  27 F.3d 1363 (9th Cir. 1994) .......................................................... 1, 13

*Oregon Envtl. Council v. Oregon Dep't of Envtl. Quality*,
  775 F.Supp. 353 (D. Or. 1991) ........................................................... 19

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986) ............................................................................ 10

*Safe Air for Everyone v. EPA*,
  488 F.3d 1088 (9th Cir. 2007) .............................................................. 3

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .............................................................. 2

*Sierra Club v. EPA*,
  671 F.3d, 955 (9th Cir. 2012) ............................................................... 3

*Sierra Club v. Korleski*,
  681 F.3d 342 (6th Cir. 2012) ...................................................... Passim

*Tcherepnin v. Knight*,
  389 U.S. 332 (1967) ............................................................................ 17

*Thomas v. Cassia Cnty.*,
  491 F. Supp. 3d 805 (D. Idaho 2020) ................................................. 16

*U.S. v. Paulson,*
    68 F.4th 528 (9th Cir. 2023) ................................................................................................ 9

*United States v. Menasche,*
    348 U.S. 528 (1955) ........................................................................................................... 11

*Vigil v. Leavitt,*
    381 F.3d 826 (9th Cir. 2004) ............................................................................................... 3


**<u>Statutes</u>**

<u>United States Code</u>

42 U.S.C. § 7401 ........................................................................................................................... 2

42 U.S.C. § 7409 ........................................................................................................................... 3

42 U.S.C. § 7410(a)(1) .................................................................................................................. 3

42 U.S.C. § 7410(c)(1) .................................................................................................................. 3

42 U.S.C. § 7410(k) ....................................................................................................................... 3

42 U.S.C. § 7410(k)(3) ................................................................................................................... 3

42 U.S.C. § 7413 ..................................................................................................................... Passim

42 U.S.C. § 7502(c)(5) .................................................................................................................. 4

42 U.S.C. § 7503(a)(1)(A) ............................................................................................................. 4

42 U.S.C. § 7509 ..................................................................................................................... Passim

42 U.S.C. § 7509(a) ................................................................................................................. 3, 11

42 U.S.C. § 7509(a)(1) ................................................................................................................. 17

42 U.S.C. § 7509(a)(2) ................................................................................................................. 18

42 U.S.C. § 7509(a)(3) ................................................................................................................. 17

42 U.S.C. § 7509(a)(4) ........................................................................................................... 11, 18

42 U.S.C. § 7511a(d) ...................................................................................................................... 4

42 U.S.C. § 7511a(d)(2) ................................................................................................................. 4

42 U.S.C. § 7511a(e) ........................................................................................................ 4

42 U.S.C. § 7511a(e)(1) .................................................................................................... 4

42 U.S.C. § 7602(q) .......................................................................................................... 9

42 U.S.C. § 7604(a)(1) ................................................................................................. 9, 11

42 U.S.C. § 7604(a)(1)(ii) ............................................................................................... 10

42 U.S.C. § 7604(b) .......................................................................................................... 9

42 U.S.C. § 7604(f) ......................................................................................................... 13

42 U.S.C. § 7604(f)(4) ...................................................................................................... 9


Public Laws

Pub. L. No. 101-549 .......................................................................................................... 9

**Rules**

Federal Rules of Civil Procedure

Fed. R. Civ. P. § 12(b)(1) .................................................................................................. 2

Fed. R. Civ. P. §12(b)(6) ................................................................................................... 2

**Regulations**

Code of Federal Regulations

40 C.F.R. § 52.220(c)(311)(i)(B)(*1*) ............................................................................... 5

40 C.F.R. § 52.220(c)(400)(i)(A)(*1*) ............................................................................... 5


Federal Register

66 Fed. Reg. 56476 (Nov. 8, 2001) ................................................................................... 6

65 Fed. Reg. 58252 (Sept. 28, 2000) ................................................................................. 5

66 Fed. Reg. 37587 (July 19, 2001) ................................................................................... 5

67 Fed. Reg. 48039 (July 23, 2002) ........................................................................................ 6

68 Fed. Reg. 7330 (Feb. 13, 2003) .......................................................................................... 5

69 Fed. Reg. 27837 (May 17, 2004) ........................................................................................ 5

76 Fed. Reg. 76112 (Dec. 6, 2011) .......................................................................................... 5

76 Fed. Reg. 82133 (December 30, 2011) ............................................................................... 6

79 Fed. Reg. 55637 (Sept. 17, 2014) ...................................................................................... 5

81 Fed. Reg. 84481 (November 23, 2016) ............................................................................... 6

86 Fed. Reg. 67329 (Nov. 26, 2021) ....................................................................................... 6

### I.   Introduction.

The San Joaquin Valley has some of the worst air quality in the United States combined with racially disparate exposures to that pollution. Plaintiffs Central Valley Air Quality Coalition, *et al*. (collectively "Environmental Justice Organizations") file this action to secure environmental justice in their communities and hold Defendants San Joaquin Valley Unified Air Pollution Control District, *et al*. (collectively "Air District") accountable. The Air District has violated, and continues to violate, the Equivalency System which ensures the Air District delivers federally required mitigation for air pollution from new and modified major sources. The U.S. Environmental Protection Agency ("EPA") insisted on an enforceable Equivalency System as part of the State Implementation Plan ("SIP").

The Air District's Motion to Dismiss incorrectly claims that Congress did not provide citizens with a right of action to enforce state agencies' regulatory obligations in their State Implementation Plans. Relying on the 2-1 split decision of the Sixth Circuit Court of Appeals in *Sierra Club v. Korleski*, 681 F.3d 342 (6th Cir. 2012), the Air District asks this Court to reverse more than four decades of unbroken authority in the Ninth Circuit holding that citizens may sue state agencies acting in their regulatory capacity. *See League to Save Lake Tahoe, Inc. v. Trounday*, 598 F.2d 1164 (9th Cir. 1979); *McCarthy v. Thomas*, 27 F.3d 1363 (9th Cir. 1994); *Bayview Hunters Point Community Advocates v. Metropolitan Transp. Comm'n*, 366 F.3d 692 (9th Cir. 2004); *Committee for a Better Arvin v. U.S. E.P.A.*, 786 F.3d 1169 (9th Cir. 2015); *Association of Irritated Residents v. U.S. E.P.A.*, 10 F.4th 937 (9th Cir. 2021). In the two most recent decisions, the Ninth Circuit specifically held that citizens could enforce the regulatory obligations undertaken by the Air District and the California Air Resources Board in the California State Implementation Plan. The Ninth Circuit reached these holdings while recognizing the U.S. Environmental Protection Agency's concurrent authority to enforce the SIP and impose sanctions for Clean Air Act noncompliance. Citizen enforcement thus in no way contradicts the cooperative federalism in the Clean Air Act because Congress authorized citizen enforcement as part of that scheme. The Court should follow the established law of the Ninth Circuit, not the Sixth. The Motion to Dismiss does not, and cannot, reconcile *Korleski* with that binding authority.

Emboldened by *Korleski*, the Air District contends that Congress used coded language in sections describing EPA's authority that somehow indicates Congress did not want citizen suits to hold

state regulators accountable. But the Air District ignores the plain language of the citizen suit provision. The citizen suit provision's unambiguous language admits to no exception for state agencies acting in their regulatory capacity. Congress, recognizing faltering government enforcement, wanted to empower citizens while authorizing district courts to provide injunctive relief for violations of an emission standard or limitation. Without any indication of congressional intent to the contrary, the plain language of the citizen suit provision should control. This Court should thus deny the Motion to Dismiss.

## II.    Standard of Review for a Rule 12(b)(1) and 12(b)(6) Motion to Dismiss.

In a FED. R. CIV. P. 12(b)(6) motion, the Court should accept as true the factual allegations of the complaint and indulge all reasonable inferences to be drawn from them, construing the complaint in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1049 (9th Cir. 1993) (Rule 12(b)(6) motion is viewed with disfavor and is rarely granted).

The Court should also resolve a facial attack to jurisdiction under FED. R. CIV. P. 12(b)(1) "as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *see also Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1178 (9th Cir. 2000). While a court "may review evidence beyond the complaint," "[i]n resolving a *factual* attack on jurisdiction," such review is only allowed for factual challenges to "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (emphasis added). Since the Defendants' jurisdictional challenge is facial, not factual, the Court should apply the ordinary standard for assessing a motion to dismiss under FED. R. CIV. P. 12(b)(6).

## III.    Statutory and Regulatory Background.

Congress enacted the Clean Air Act to promote the public health and welfare and help areas like the San Joaquin Valley which suffer from elevated levels of ozone and other pollutants. 42 U.S.C. § 7401. To achieve its objectives, Congress created a system of "cooperative federalism." *See Vigil v.*

*Leavitt*, 381 F.3d 826, 830 (9th Cir. 2004). The Act makes "the States and the Federal government partners in the struggle against air pollution." *General Motors Corp. v. U.S.*, 496 U.S. 530, 532 (1990).

The Act directs the EPA to establish National Ambient Air Quality Standards ("standards" or "NAAQS") sufficient "to protect public health" with "an adequate margin of safety." 42 U.S.C. § 7409. An area that does not meet the standards is called a "nonattainment area." *Sierra Club v. EPA*, 671 F.3d, 955, 958 (9th Cir. 2012). The Act's remedial scheme requires states to develop the plans and strategies – collectively called the State Implementation Plan ("SIP") – for reducing emissions to attain the health-based standards. 42 U.S.C. § 7410(a)(1); *see also Association of Irritated Residents v. EPA*, 686 F.3d 668, 671 (9th Cir. 2012) ("states have primary responsibility . . . and must detail their efforts in a [SIP] for each region within that state").

These plans and strategies must meet certain minimum requirements, and Congress directed EPA to review each plan and strategy to ensure compliance. 42 U.S.C. § 7410(k). If the plans and strategies comply with the Act, then EPA shall approve them as part of the State Implementation Plan. 42 U.S.C. § 7410(k)(3). If EPA finds that a SIP submission is deficient, EPA must disapprove the submission. *Id*. Section 110(c)(1) of the Act requires EPA to promulgate a Federal Implementation Plan two years after EPA finds a state has failed to make a required submission or EPA has disapproved a submission "unless the State corrects such deficiency, and the Administrator approves the plan or plan revision." 42 U.S.C. § 7410(c)(1). In addition, when EPA disapproves a submission or finds that a state has failed to submit a required plan, failed to submit a portion of a plan, for failed to submit a required measure, then section 179(a) of the Act requires EPA to impose sanctions, including federal highway funding suspension and increased offsets for major stationary sources, after an 18-24 month grace period "unless such deficiency has been corrected." 42 U.S.C. § 7509(a).

Upon EPA approval, a state's submission "bec[o]me[s] *federal* law …, and c[annot] be changed unless and until EPA approve[s] any change." *Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1096 (9th Cir. 2007) (emphasis original). A SIP "once adopted by a state and approved by the EPA, becomes controlling and must be carried out by the state." *Friends of the Earth v. Carey,* 535 F.2d 165, 169 (2nd Cir. 1976).

The attainment plan shall include a permitting program for the construction and operation of new

or modified major stationary sources that emit pollutants over a threshold amount. 42 U.S.C. § 7502(c)(5). This permit program, called federal New Source Review ("federal NSR"), requires new or modified major stationary sources to offset their emissions with reductions from other sources so that aggregate emissions decrease in a nonattainment area. 42 U.S.C. § 7503(a)(1)(A). Federal New Source Review conditions the quantity of offsets on the severity of the ozone air pollution problem in a nonattainment area. In a severe ozone nonattainment area, a stationary source triggers federal NSR and becomes a major stationary source when its potential to emit exceeds 25 tons per year of ozone-forming oxides of nitrogen or volatile organic compounds. 42 U.S.C. § 7511a(d). Major stationary sources must provide offsets at a ratio of 1.3 pounds of offsets to every 1 pound of emissions to ensure a net air pollution reduction in the air basin. 42 U.S.C. § 7511a(d)(2). In an extreme ozone nonattainment area, federal NSR becomes more stringent and a stationary source triggers federal NSR and becomes a major stationary source when its potential to emit exceeds 10 tons per year and must provide even more offsets at a ratio of 1.5 pounds of offsets to every 1 pound of emissions. 42 U.S.C. § 7511a(e), (e)(1).

Rules 2020 and 2201 implement stationary source permitting and offset requirements imposed by California law and the Clean Air Act. The California state law permitting and offsets program is called "District New Source Review" or "District NSR." Stationary sources subject to offsets must obtain and provide the offsets in the form of Emission Reduction Credits ("ERC"), the currency for offsets. Complaint ¶ 51. District New Source Review and federal New Source Review offsets requirements apply different standards for determining the surplus value of an Emission Reduction Credit. Complaint, Exh. 2 at 6-7 (Dkt. No. 1-3). District New Source Review determines the surplus value at the time a source generates the Emission Reduction Credit (time of issuance). *Id.* Federal New Source Review determines the surplus value at the time a source uses the ERC to satisfy the offsets requirement (time of use). *Id.* District New Source Review and federal New Source Review also differ with respect to the amount of emissions a source must offset. *Id.*

Because of the differences between federal New Source Review and District New Source Review, the Air District adopted the Annual Offset Equivalency Tracking System ("Equivalency System"), codified as section 7 of Rule 2201. The EPA insisted on a federally enforceable provision in the State Implementation Plan to ensure that District New Source Review, in the aggregate, would meet the federal

requirements for offsets, including the quantity of offsets required and the surplus value at the time of use. The EPA disapproved the Equivalency System as initially adopted by the District. EPA found that the Equivalency System was "deficient because it [did] not include a specific and enforceable remedy for a shortfall in the annual equivalency demonstration . . . [and] the rule must be revised to contain a mandatory and enforceable remedy to cure any annual shortfall and prevent future shortfalls." 65 Fed. Reg. 58252, 58253 (Sept. 28, 2000); 66 Fed. Reg. 37587 (July 19, 2001).

The EPA approved the December 19, 2001 version of Rule 2201 containing an amended Equivalency System because EPA found the Air District had corrected the lack of an enforceable remedy. 68 Fed. Reg. 7330 (Feb. 13, 2003); 69 Fed. Reg. 27837 (May 17, 2004); 40 C.F.R. § 52.220(c)(311)(i)(B)(*1*). The April 21, 2011 version of Rule 2201 is the most recent-EPA approved Rule 2201 version in the State Implementation Plan. 76 Fed. Reg. 76112 (Dec. 6, 2011); 79 Fed. Reg. 55637 (Sept. 17, 2014); 40 C.F.R. § 52.220(c)(400)(i)(A)(*1*).

The Equivalency System requires the Air District to prepare annually and submit to the EPA Offset Equivalency Reports that compare the offsets required under District New Source Review to what would otherwise have been required under federal New Source Review by applying two analytical frameworks for offset quantity and time-of-use surplus value. Complaint ¶ 58; Rule 2201 §§ 7.2.1 and 7.2.2. The EPA and the Air District have adopted the terms "Test 1" for the offset quantity analysis in section 7.2.1 and "Test 2" for the time-of-use surplus value analysis in section 7.2.2. Complaint ¶ 58.

Test 1 compares the total quantity of offsets that would have been required by federal New Source Review – the federal offset quantity – to the total quantity of offsets required by District New Source Review. Rule 2201 § 7.2.1.1. If Test 1 fails to demonstrate equivalency, then the District shall rely on "additional creditable emission reductions" that have not been used as offsets and have been banked or have been generated as a result of permitting actions to make up any shortfall. Rule 2201 § 7.4.1.1. If the District lacks sufficient additional creditable emission reductions to demonstrate equivalency under Test 1, then all Authority to Construct permits issued after the report deadline for that year shall comply with federal offsets requirements. Rule 2201 § 7.4.1.2.

Test 2 compares the total quantity of offsets that would have been required by federal New Source Review – the federal offset quantity – with the time-of-use surplus value of creditable emissions

reductions used as offsets in District New Source Review. Rule 2201 §§ 7.1.3.1, 7.2.2.1. Test 2 allows the Air District to use "additional creditable emissions reductions" that have not used as offsets and have been banked or have been generated as a result of permitting actions to supplement the surplus value of the offsets required by District New Source Review. Rule 2201 § 7.2.2.2. If the District fails to demonstrate equivalency under Test 2, an automatic remedy applies so that all Authority to Construct permits issued for new major sources or federal major modifications after the report deadline shall ensure that emission reductions used to satisfy offset requirements are creditable and that the time-of-use surplus value of those credits is determined at the time of Authority to Construct permit issuance. Rule 2201 § 7.4.2.1.

If the Air District fails to submit an annual report complying with Equivalency System requirements for Test 1 or Test 2, then automatic remedies for each test will apply from the deadline of such report until the District submits a corrected report. Rule 2201 §§ 7.4.1.3, 7.4.2.3.

## IV.   Statement of Facts.

Ground-level ozone is formed by a reaction between oxides of nitrogen ("NOx") or volatile organic compounds ("VOC") in the presence of heat and sunlight. Complaint ¶ 39 (Dkt. No. 1). Unlike ozone in the upper atmosphere which forms naturally and protects the Earth from ultraviolet radiation, ozone at ground level forms primarily from anthropogenic pollution. *Id*. Fine particulate matter ("PM2.5") is both a directly emitted pollutant and forms secondarily in the atmosphere by the precursor pollutants NOx, ammonia, sulfur oxides, and VOC. Complaint ¶ 40. New and modified stationary sources such as oil production facilities, oil refineries, natural gas power plants, and industrial facilities emit NOx and VOC that contribute to ozone and PM2.5 pollution in the San Joaquin Valley. Complaint ¶ 37.

Ozone and PM2.5 air pollution in the San Joaquin Valley air basin has caused, and continues to cause, an environmental justice and public health crisis. Complaint ¶¶ 38, 44-45. The EPA has found that the San Joaquin Valley has failed to attain several National Ambient Air Quality Standards by their respective deadlines.[1] According to the American Lung Association's State of the Air 2023 report, the

---

[1] Complaint ¶ 43 (citing 66 Fed. Reg. 56476 (Nov. 8, 2001) (1-hour ozone standard failure to attain by 1999); 67 Fed. Reg. 48039 (July 23, 2002) (PM-10 standard failure to attain by 2001); 76 Fed. Reg. 82133 (December 30, 2011) (1-hour ozone standard failure to attain by 2010); 81 Fed. Reg. 84481 (November 23, 2016) (1997 24-hour and annual PM2.5 standards failure to attain by 2015); 86 Fed. Reg. 67329 (Nov. 26, 2021) (disapproving 1997 annual PM2.5 implementation plan because of failure

cities of Visalia, Bakersfield, and Fresno-Madera-Hanford rank as the second, third, and fourth most ozone-polluted cities in the United States, respectively. Complaint ¶ 38. With respect to long-term exposure to PM2.5, Kern, Tulare, Kings, Fresno, and Stanislaus counties rank as the first, second, fifth, sixth, and sixteenth most PM2.5-polluted counties in the nation, respectively. *Id.*

Exposure to ozone and PM2.5 can cause significant public health effects, including decreased lung function, exacerbation of respiratory disease, increased emergency department visits and hospitalizations, increased risk of premature death, permanent lung damage, stunted lung development in children, asthma in children, decreased lung function, and increased risk of death from cardiovascular disease and heart attacks. Complaint ¶¶ 41-42. The California Air Resources Board has estimated that PM2.5 exposure has caused 1,200 premature deaths annually in the San Joaquin Valley. Complaint ¶ 42.

San Joaquin Valley communities suffer significant health disparities from air pollution compared to other communities in California and the United States. Complaint ¶¶ 44-45. Communities also suffer racially disparate exposures to ozone and PM2.5. Complaint ¶ 45.

In June 2020, the Enforcement Division of the California Air Resources Board released an audit of the Equivalency System called the Review of the San Joaquin Valley Air Pollution Control District Emission Reduction Credit System (hereafter "CARB Audit"). Complaint ¶ 82; Complaint Exh. 2 (Dkt. No. 1-3). The CARB Audit found the Air District had relied on invalid emissions reductions from an agricultural internal combustion engine incentive program and reductions from "orphan shutdowns" to claim equivalency. Complaint ¶¶ 85-91. Following the CARB Audit, the Air District provisionally withdrew all reductions from the agricultural internal combustion engine incentive program and orphan shutdowns and admitted that the Equivalency System no longer demonstrated equivalency for NOx and VOC for Test 1 and Test 2. Complaint ¶¶ 82, 108-116.

**V.   Summary of Claims.**

The Complaint pleads five claims alleging the Air District has violated and continues to violate an emission standard or limitation. The First Claim for Relief alleges that the Air District submitted certain annual Offset Equivalency Reports that rely on invalid additional creditable emissions reductions

to attain the standard by December 31, 2020)).

from the agricultural internal combustion engine incentive program ("AG-ICE") and orphan shutdowns, and that the Air District failed to correct those reports after withdrawing all AG-ICE and orphan shutdown reductions from the Equivalency System. Complaint ¶¶ 121-130.

The Second Claim for Relief alleges that the Air District submitted certain annual Offset Equivalency Reports that suppressed the federal offset quantity in Test 1 and Test 2 because the Air District applied the severe ozone nonattainment area major source threshold and offset ratio rather than the lower threshold and more stringent offset ratio required for an extreme ozone nonattainment area. Complaint ¶¶ 131-141.

The Third Claim for Relief alleges that the Air District submitted certain annual Offset Equivalency Reports that failed to disclose Test 1 and Test 2 data for NOx and VOC after the Air District had admitted Equivalency System failure in 2020. Complaint ¶¶ 142-149.

The Fourth Claim for Relief alleges that the Air District failed to implement automatic remedies for submitting Offset Equivalency Reports that failed to comply with the Equivalency System as alleged in the First, Second, and Third Claims for Relief. Complaint ¶¶ 150-157.

The Fifth Claim for Relief alleges that the Air District failed to implement automatic remedies for Test 1 and Test 2 equivalency failure for NOx and VOC prior to 2020, and the data showing the year(s) in which equivalency failures occurred are in the exclusive knowledge and control of the Air District. Complaint ¶¶ 158-165.

## VI.   Argument.

A.   The plain language of the Clean Air Act citizen suit provision provides a right of action against the Air District in its regulatory capacity.

The plain language of the citizen suit provision provides this Court with jurisdiction because the complaint alleges the Air District violated an emission standard or limitation.[2] "When examining the scope of a right of action under a federal statute, we employ the usual tools of statutory construction, looking first at the plain words of the statute, 'particularly to the provisions made therein for

---

[2] The Motion to Dismiss does not contest whether the Equivalency System is an emission standard or limitation. "This Motion does not address whether Section 7 of Rule 2201 sets forth 'emission standards and limitations.' The Air District will reserve argument on that issue." Motion to Dismiss at 17 n.20.

1  enforcement and relief.'" *City and County of San Francisco v. U.S. Dept. of Transp.*, 796 F.3d 993, 998

2  (9th Cir. 2015) (quoting *Middlesex Cnty. Sewerage Auth. V. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 13

3  (1981). The Clean Air Act's citizen suit provision authorizes any person to commence a civil action

> against any person (including (i) the United States, and (ii) any other
> governmental instrumentality or agency to the extent permitted by the
> Eleventh Amendment to the Constitution) who is alleged to have violated
> (if there is evidence that the alleged violation has been repeated) or to be
> in violation of (A) an emission standard or limitation under this chapter or
> (B) an order issued by the Administrator or a State with respect to such a
> standard or limitation.

8  42 U.S.C. § 7604(a)(1). Congress amended the citizen suit provision in 1990 to further expand the scope

9  of "emission standard or limitation" to include "any other standard, limitation, or schedule established

10  under any permit issued pursuant to subchapter V or under any applicable State implementation plan

11  approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as

12  a condition of operations." 42 U.S.C. § 7604(f)(4); Pub. L. No. 101-549, § 707, 104 Stat. 2399. The Act

13  further defines "applicable implementation plan" as "the portion (or portions) of the implementation

14  plan, or most recent revision thereof, which has been approved under section 7410 of this title." 42

15  U.S.C. § 7602(q).

16  "Statutory construction must begin with the language employed by Congress and the assumption

17  that the ordinary meaning of that language accurately expresses the legislative purpose." *U.S. v.

18  Paulson*, 68 F.4th 528, 539 (9th Cir. 2023) (quoting *Engine Mfrs. Ass'n v. South Coast Air Quality

19  Mgmt. Dist.*, 541 U.S. 246, 252 (2004)). "Only the most extraordinary showing of contrary intentions [in

20  the legislative history] would justify limitation on the plain meaning of the statutory language." *Garcia

21  v. U.S.*, 469 U.S. 70, 75 (1984). Nothing in the plain language of the citizen suit provision would exempt

22  the conduct of state agencies acting in their regulatory capacity. Congress authorized citizens to enforce

23  an emission standard or limitation and conferred jurisdiction with only one limitation: a plaintiff must

24  provide notice sixty days prior to initiating the citizen suit. *See* 42 U.S.C. § 7604(a)(1), (b). The citizen

25  suit provision admits to no other limitation on this Court's jurisdiction. The plain language of the citizen

26  suit provision and the definition of emission standard or limitation authorize citizen suits against state

27  agencies acting as regulators.

28  Moreover, nothing in the legislative history suggests that Congress wanted to limit the scope of

citizen suit enforcement as the Air District contends. *See American Lung Ass'n of New Jersey v. Kean*, 871 F.2d 319, 323-324 (3d. Cir. 1989) (explaining that the Clean Air Act legislative history does not indicate Congress wanted to prevent citizen enforcement of state agencies' regulatory obligations). And the legislative history echoes with plain expressions of Congress's intent to empower citizens to enforce the Act because Congress knew that "government initiative in seeking enforcement under the Clean Air Act has been restrained.'" *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560 (1986) (quoting S.Rep. No. 91-1196, p. 36 (1970)); *see also Carey*, 535 F.2d at 172-173 ("Congress made clear that citizen groups are not to be treated as nuisances or troublemakers but rather as welcomed participants in the vindication of environmental interests"). The "very purpose of the citizens' liberal right of action is to stir slumbering agencies and to circumvent bureaucratic inaction that interferes with the scheduled satisfaction of the federal air quality goals." *Carey*, 535 F.2d at 173 (2d Cir. 1976).

The Air District, unable to find any support in the plain meaning of the citizen suit provision, the legislative history, or in any cases decided by the Ninth Circuit, incorrectly contends that Congress's use of the term "violation" limits the scope of the citizen suit right of action to only actions against polluters. Motion to Dismiss at 16-24. The Air District points to EPA's enforcement authority to contend that the term "violation" in 42 U.S.C. § 7413 makes it "simply 'implausible' to suggest that the Act was intended to authorize EPA enforcement action against state agencies acting as regulators. Motion to Dismiss at 17:20-21 (citing *Korleski*, 681 F.3d at 349). But the Air District cites no authority holding 42 U.S.C. § 7413 inapplicable as to state agencies acting as regulators. *Id*. at 16-24. In any case, any potential lack of enforcement authority under 42 U.S.C. § 7413 should only confine EPA to its sanctions authority under 42 U.S.C. § 7509, and not in any way to limit the scope of citizen suits. The fact that Congress expressly allowed a citizen suit against "(ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution," 42 U.S.C. § 7604(a)(1)(ii), indicates Congress's intent to allow citizen suits against state agencies without any limitation except the Eleventh Amendment.

The Air District next contends that Congress's use of the word "deficiency" in 42 U.S.C. § 7509 confirms "Congress never intended to allow a citizen suit based on a states' failure to enforce or

implement a SIP." Motion to Dismiss at 21:28 to 22:1. The Air District quotes 42 U.S.C. § 7509 to infer that "such deficiency" refers solely to "any requirement of an approved plan (or approved part of a plan) is not being implemented." Motion to Dismiss at 21:20-25 (quoting 42 U.S.C. § 7509(a), (a)(4)). The phrase "unless such deficiency," however, refers to all potential state failures, including a state's failure to submit a plan, failure to submit a portion of a plan, failure to make any other required submission, and EPA disapproval of a state's submission for noncompliance with any requirement of the Act. 42 U.S.C. § 7509(a). Those varying forms of states noncompliance trigger sanctions, and Congress chose to use the word "deficiency" to refer to all of those potential triggering events, not just a state agency's failure to implement the State Implementation Plan.

Finally, the Air District argues that Congress intended to exclude state agencies acting as regulators because it only authorized suits against EPA for violations of a nondiscretionary duty. Motion to Dismiss at 22:14-25 (citing 42 U.S.C. § 7604(a)(2)). The Air District fails to acknowledge that Congress, as discussed above, authorized citizen suits against states for any violations of an emission standard or limitation subject only to the Eleventh Amendment. 42 U.S.C. § 7604(a)(1). The Air District's tortured argument ignores unequivocal language Congress did use. The Court should give effect to every clause and word of the citizen suit provision rather than eviscerate an entire section. *See United States v. Menasche*, 348 U.S. 528, 538 (1955).

Nothing in section 304(a)(1), 42 U.S.C. § 7604(a)(1), or the legislative history suggests that Congress intended a violation of an emission standard or limitation to preclude an action against the Air District acting as a regulator. The Court should deny the Motion.

> **B.**    **Ninth Circuit authority has for decades authorized citizen suits to hold states accountable to their obligations in their State Implementation Plans.**

The Ninth Circuit has interpreted the Clean Air Act for more than forty years to allow citizen suits against state agencies acting in their regulatory capacity for violations of an emission standard or limitation. This vast body of binding authority either holds that courts have jurisdiction to adjudicate violations of a state agency's regulatory obligations in a State Implementation Plan or that such regulatory obligations are an emission standard or limitation enforceable by citizens.

The Ninth Circuit in *Committee for a Better Arvin v. U.S. E.P.A.* unequivocally held that citizens

may enforce the Air District's and the California Air Resources Board's regulatory obligations in the State Implementation Plan. 786 F.3d 1169, 1182 (9th Cir. 2015). In a challenge to EPA's approval of commitments to adopt control measures made by the Air District and the California Air Resources Board, the Ninth Circuit held that mandatory, non-discretionary language requiring government agency action within the control of the agencies made the commitments to adopt emission control measures enforceable strategies and not mere aspirational goals. *Committee for a Better Arvin*, 786 F.3d at 1179-1180 (citing *Bayview Hunters Point Community Advocates v. Metropolitan Transp. Comm'n*, 366 F.3d 698-699 (9th Cir. 2004)). The Ninth Circuit concluded that the "Petitioners can seek timely remedies under the [Clean Air Act] if California does not fulfill its commitments to propose and adopt emission control measures or to achieve aggregate emission reductions." *Id*. at 1181. The Ninth Circuit then held "that these commitments are enforceable emission standards or limitations." *Id*. at 1182.

*Committee for a Better Arvin* authorized citizen enforcement *in addition to* the EPA's enforcement and sanctions authority, and justified its holding with the distinction between citizen enforcement of emission standards and limitations and EPA's broader enforcement of a SIP's aspirational goals and objectives. *Committee for a Better Arvin*, 786 F.3d at 1182. The Ninth Circuit explained that "if California does not fulfill a commitment to propose and adopt emission control measures or to achieve aggregate emission reductions, the public can seek a remedy for such specific violations." *Id*. On the other hand, if California fails to attain the standard, "EPA may use means available under other parts of the CAA to ensure that the state attains the relevant national air quality standard." *Id*. (citing 42 U.S.C. §§ 7413 (EPA enforcement authority) and 7509 (EPA sanctions authority)). The Air District and the Board obligated themselves to act as regulators in the State Implementation Plan and *Committee for a Better Arvin* holds that citizens may enforce those regulatory duties as an emission standard or limitation while at the same time recognizing EPA's complementary authority to ensure compliance with the SIP through agency enforcement or imposing sanctions.

In *Association of Irritated Residents v. U.S. E.P.A.*, the issue was whether the EPA appropriately approved the California Air Resources Board's Enhanced Enforcement Activities Program as an enforceable measure. 10 F.4th 937, 947 (9th Cir. 2021). The *AIR* court found that CARB must adopt a report within 60 days of triggering conditions and must implement the measures identified in the

Program. *Id*. The Ninth Circuit found that if "the report is not drafted, or if the chosen program is not implemented, those failings may be challenged either by the EPA or by citizens." *Id*. (citing 42 U.S.C. §§ 7509, 7604(a)). The *AIR* court then held that the Program was enforceable and denied the Petition for Review on that issue. *Id*. (citing *Committee for a Better Arvin*, 786 F.3d at 1177).

In *League to Save Lake Tahoe v. Trounday*, the Ninth Circuit held it had jurisdiction in a citizen suit alleging that the state agency violated its regulatory duties in the Nevada State Implementation Plan. 598 F.2d 1164, 1168 (9th Cir. 1979). The Ninth Circuit expressly rejected a narrow reading of its jurisdiction to only "clear-cut violations by polluters" because Congress had amended the definition of an emission standard or limitation. *Id*. at 1169 (citing *Hancock v. Train*, 426 U.S. 167, 197 (1976)). "The congressional expansion of subsection (f) of section 304 through the 1977 Amendments explicitly broadened federal jurisdiction to include alleged violations of any condition or requirement of a state implementation plan related to 'transportation control measures (or) air quality maintenance plans.'" Applying that version of section 304(f), 42 U.S.C. § 7604(f), the Ninth Circuit held it had jurisdiction over alleged violations of the regulatory actions of the state agency defendants. *Id*. at 1173-1174. The Court proceeded to hold that the complaint failed to state a claim because the state agency defendants had "fulfilled their respective obligations under the Nevada plan" and the complaint "failed to allege facts constituting a violation of a specific emission limitation." *Id*. at 1174.

In *McCarthy v. Thomas*, the Ninth Circuit reversed a district court decision declining to enforce the State Implementation Plan against cities acting as regulators. 27 F.3d 1363 (9th Cir. 1994). The district court held that commitments by Phoenix and Tucson to enlarge their mass transit systems ("Mass Transit Provisions") did not appear in any final State Implementation Plan and thus the plaintiffs could not enforce the commitments. *Id*. at 1367. The *McCarthy* court affirmed that a State Implementation Plan "is enforceable in federal court against a state by (1) the EPA or (2) a citizen to the extent permitted by the Eleventh Amendment." *Id*. at 1365 (citing 42 U.S.C. §§ 7413, 7604(a), (f)). The Ninth Circuit then held that the EPA had conditionally approved the Mass Transit Provisions as part of the State Implementation Plan, and "the plans became part of Arizona's SIP, now binding on the cities." *Id*. at 1368-1369.

In yet another instance, the Ninth Circuit exercised jurisdiction in a citizen suit against agencies to interpret the agencies' regulatory obligations in the California State Implementation Plan. *Bayview*

*Hunters Point Community Advocates v. Metropolitan Transp. Comm'n*, 366 F.3d 692 (9th Cir. 2004). The *Bayview* court acknowledged at the outset that "SIPs are enforceable by either the State, the EPA, or via citizens suits brought under Section 304(a) of the Clean Air Act." *Bayview*, 366 F.3d at 695 (citing *Baughman v. Bradford Coal Co.*, 592 F.2d 215, 217 n.1 (3d Cir. 1979) and 42 U.S.C. § 7604(a)). And *Bayview* recognized the "well-established rule that courts may only enforce specific SIP strategies, and may not enforce a SIP's overall objectives or aspirational goals." *Id*. at 701. Applying these principles, the court held that the SIP did not establish a mandatory obligation for the agencies to increase public transit ridership by 15 percent and that the plaintiffs could not enforce that aspirational goal. *Id*. at 698.

This Court must follow the law of the Ninth Circuit in *Committee for a Better Arvin*, *Association of Irritated Residents*, *Trounday*, *McCarthy*, and *Bayview*, and should deny the Motion to Dismiss.

           C.     The Supreme Court and the Ninth Circuit have not interpreted section 304(a)(1) of the Clean Air Act to preclude citizen suits against state agencies acting as regulators.

Disregarding the four decades of Ninth Circuit authority, the Air District argues incorrectly that two inapposite decisions holding citizen suit provisions did not authorize actions against *federal agencies* are "binding on this Court" and "interpreted essentially the same language found in the [Clean Air] Act." Motion to Dismiss at 21:10-12. The Air District twists the holdings of *Bennett v. Spear*, 520 U.S. 154 (1997), and *San Francisco* to fit its argument, but a closer examination of those decisions exposes them as inapposite because they limited citizen suits against *federal* agencies and said nothing about citizen suits against *state* agencies.

In *Bennett*, the plaintiffs filed a citizen suit alleging violations of the Endangered Species Act when the U.S. Fish & Wildlife Service issued a biological opinion concerning endangered species. *Bennett*, 520 U.S. at 157. The Court acknowledged that the Endangered Species Act authorized citizen suits against private parties and regulators yet held that the citizen suit provision was "not an alternative avenue for judicial review of the Secretary's implementation of the statute." *Id*. at 173. The Court observed that the Endangered Species Act's citizen suit provision authorized suits against the Secretary for violations of a nondiscretionary duty, and that provision would be superfluous if another section of the citizen suit provision authorized a citizen suit against the Secretary for "any" violation of the Endangered Species Act. *Id*. The Court also concluded that the Endangered Species Act used the term

"violation" in the section authorizing the Secretary to enforce the Act but the Act did not contemplate the Secretary enforcing the Act against itself. *Id*. at 173-174. Finally, the Court concluded that interpreting "violation" to include discretionary actions of the Secretary would abrogate the Administrative Procedure Act's final agency action requirement. *Id*. at 174. Accordingly, the Court held that the Endangered Species Act only authorized a citizen suit against the federal agency implementing the statute for nondiscretionary actions and not for "the Secretary's maladministration of the ESA." *Id*.[3]

The Air District argues that the Ninth Circuit's decision in *San Francisco* likewise precludes this Court's jurisdiction to adjudicate a violation of an emission standard or limitation against a state agency. Motion to Dismiss at 20:07 to 21:12. While *San Francisco* involved an attempt to use a citizen suit in an action against a *federal* regulator, the action sought mandamus relief regarding the federal agencies' performance of their regulatory duties. *San Francisco*, 796 F.3d at 998. The Ninth Circuit applied *Bennett* and held that the citizen suit provision in the Pipeline Safety Act did not authorize mandamus relief against the federal agency. *Id*. at 1000.

The Air District insists that *Bennett* means that the Endangered Species Act's citizen suit provision "can only be used to sue 'regulated parties' and cannot be used to challenge F&WS's 'implementation of' the ESA." Motion to Dismiss at 18:3-4. Applying a similar reading to *San Francisco*, the Air District argues that this Court should apply *San Francisco* to preclude jurisdiction here. *Id*. at 20:7 to 21:12. But *Bennett* and *San Francisco* provide no authority limiting this Court's jurisdiction to adjudicate an alleged violation of an emission standard or limitation against a *state* agency, because the Supreme Court's holding in *Bennett* and the Ninth Circuit's holding in *San Francisco* do not restrict actions against state regulators under the Endangered Species Act and Pipeline Safety Act, respectively. Accordingly, *Bennett* and *San Francisco* are inapposite.

---

[3] Courts have adjudicated claims against state agencies for violations of the Endangered Species Act in their regulatory capacity even after *Bennett*, further demonstrating that *Bennett* did not preclude actions against state regulators for regulatory actions that violated the Endangered Species Act. *See, e.g., Animal Prot. Inst. v. Marten*, 588 F.Supp.2d. 70, 98-99 (D. Me. 2008). Furthermore, none of the authority the Air District cites outside of the Sixth Circuit held that *Bennett* precluded jurisdiction in citizen suits against state regulators. Motion to Dismiss at 19:15 to 20:6.

D.     *Sierra Club v. Korleski* is a wrongly decided Sixth Circuit outlier which this Court should decline to follow.

Unable to credibly confront *Committee for a Better Arvin*, *Association of Irritated Residents Trounday*, *McCarthy*, and *Bayview*, the Air District relies heavily on *Korleski* and replicates the Sixth Circuit's mistakes. Motion to Dismiss at 16-17, 21:15 to 24:22. This Court should not accept the Air District's invitation and follow this wrongly decided, split opinion that failed to adhere to the law-of-the-circuit doctrine. *Korleski*, 681 F.3d at 353-355 (Cole, J., dissenting) (citing *United States v. Ohio Department of Highway Safety*, 635 F.2d 1195 (6th Cir. 1980)); *see also* A. Sivaram, Why Citizen Suits Against States Would Ensure the Legitimacy of Cooperative Federalism Under the Clean Air Act, 40 *Ecology Law Quarterly* 443 (2013). Perhaps most importantly, this Court is bound to follow the Ninth Circuit, not the Sixth. *Carrillo v. County of Los Angeles* 798 F.3d 1210, 1223 (9th Cir. 2015) (holding Ninth Circuit authority was binding and the court should ignore contrary Third Circuit authority); *Thomas v. Cassia Cnty.*, 491 F. Supp. 3d 805, 809 (D. Idaho 2020), aff'd, No. 20-35862, 2022 WL 1223705 (9th Cir. Apr. 26, 2022) (District Court must follow Ninth Circuit authority and should ignore contrary Sixth Circuit authority).

The Sixth Circuit addressed the issue of whether the Clean Air Act citizen suit allowed an action against the Ohio EPA for its violation of its duty to require Best Available Technology ("BAT") as required by the State Implementation Plan. *Korleski*, 681 F.3d at 345.[4] The Sixth Circuit assumed the duty to require Best Available Technology was an emission standard or limitation, but then interpreted the term "violation" in the context of EPA's enforcement authority under 42 U.S.C. § 7413 and EPA's authority to impose sanctions under 42 U.S.C. § 7509. *Id*. at 348-351. The *Korleski* court held that the term "violation" in the citizen suit provision did not authorize actions against state agencies acting as regulators. *Korleski*, 681 F.3d at 349-351. The *Korleski* court reached this holding by declining to follow the Sixth Circuit's *Highway Safety*, the Ninth Circuit's *McCarthy*, the Second Circuit's *Columbus Center*, and the Third Circuit's *Kean* decisions, insisting instead that *Bennett* was controlling authority for the Clean Air Act. *Korleski*, 681 F.3d at 352 (noting the decisions were pre-*Bennett* and "[s]uffice it

---

[4] *Korleski* arose in a very unusual circumstance in which the Ohio state legislature passed a law that was contradictory to the SIP provision at issue. *Korleski*, 681 F.3d at 344. There is no such state law conflict in the instant case.

to say we follow *Bennett*"). This Court should decline the Air District's invitation to follow *Korleski* for three reasons.

                  1.      The Court should interpret the Clean Air Act broadly to effectuate its remedial purpose.

EPA's authority to enforce the Clean Air Act or impose sanctions on the Air District should not justify abrogating the scope of citizen suit enforcement. This Court should interpret the citizen suit provision broadly to effectuate the Clean Air Act's remedial purpose. *Tcherepnin v. Knight*, 389 U.S. 332, 335 (1967). Whether or not Congress intended to authorize the EPA to take civil enforcement actions against states under 42 U.S.C. § 7413 should not override the plain meaning of the citizen suit provision authorizing citizen suits alleging a violation of an emission standard or limitation. *See San Francisco*, 796 F.3d at 998 (the Court first looks at the plain words of the statute, particularly the provisions made for enforcement and relief). Nor should EPA's authority to impose sanctions preclude a citizen suit to secure compliance with an emission standard or limitation.

The Ninth Circuit in *Committee for a Better Arvin* and *Association of Irritated Residents* specifically cited both of those aspects of EPA authority – enforcement and sanctions – as providing a different, independent remedy not available in citizen suit actions and as a basis for its holdings that citizens could enforce the regulatory commitments by the Air District and the California Air Resources Board. *Committee for a Better Arvin*, 786 F.3d at 1182 (citing 42 U.S.C. §§ 7413 (enforcement authority), 7509 (sanctions authority)); *Association of Irritated Residents*, 10 F.4th at 947 (citing 42 U.S.C. § 7509 (sanctions authority)). In other words, the Ninth Circuit concluded citizen suits alleging an agency's violations of a regulatory obligation coexist with EPA authority to "ensure that the state attains the relevant national air quality standard." *Committee for a Better Arvin*, 786 F.3d at 1182. That differentiation makes sense when citizens cannot enforce the goals and objectives of the State Implementation Plan, only the strategies. *Id*.; *Bayview*, 366 F.3d at 701. EPA's broader authority should not justify further restrictions on the scope of citizen suits.

EPA's sanctions authority applies much more broadly than the term emission standard or limitation. EPA may impose sanctions for a state's failure to submit a required plan or elements of a required plan. 42 U.S.C. § 7509(a)(1), (3). EPA may impose sanctions following EPA's disapproval of a

submitted plan that fails to meet the Act's minimum requirements. 42 U.S.C. 7509(a)(2). EPA may impose sanctions following a finding that "any requirement of an approved plan (or approved part of a plan) is not being implemented." 42 U.S.C. § 7509(a)(4). But the principles of cooperative federalism do not render inoperative Congress's specific authorization for citizens to enforce emission standards or limitations. Given the rationale in *Committee for a Better Arvin*, the Court should not interpret EPA's enforcement and sanctions authority as precluding jurisdiction in a citizen suit alleging a state agency has violated the State Implementation Plan.

   2. *Bennett* does not control the analysis of whether the Clean Air Act citizen suit provision authorizes actions against a state agency acting as a regulator.

  The *Korleski* court incorrectly believed that *Bennett* controlled. *Korleski*, 681 F.3d at 352 ("we have no lawful basis to distinguish that case from this one"). The Supreme Court held that the Endangered Species Act citizen suit does not authorize an action against the federal agency implementing the statute for the agency's discretionary actions. *Bennett*, 520 U.S. at 174. The citizen suit in *Korleski* did not allege that EPA violated an emission standard or limitation. Nor did *Bennett* decide the scope of the Clean Air Act citizen suit provision or interpret the term "emission standard or limitation." *Bennett* does not and cannot justify disregarding the vast body of circuit courts of appeals' decisions construing the Clean Air Act. The *Korleski* court fundamentally misconstrued and misapplied *Bennett*.

   3. *Korleski* conflicts with several circuit courts of appeal, including the Ninth Circuit.

  *Korleski* made a cursory attempt to distinguish cases from the Second, Third, and Ninth Circuit, ultimately concluding that all three did not consider the *Bennett* argument the Ohio EPA raised and "all of these cases are pre-*Bennett* . . . we follow *Bennett*." *Korleski*, 681 F.3d at 352 (distinguishing *Coal. Against Columbus Center v. City of New York*, 967 F.2d 764 (2d Cir. 1992), *McCarthy*, and *Kean*). This Court must follow the decisions of the Ninth Circuit and should decline to follow the contrary law of the Sixth Circuit. *Carrillo*, 798 F.3d at 1223.

  The Second Circuit's decisions also help to expose *Korleski* as an outlier. *See Carey*, 535 F.2d at 178 (in an action against the state to compel compliance with a state's regulatory obligations under an

approved SIP, the court determined that the "plaintiffs' right under the [Clean Air] Act to seek such an enforcement order is beyond challenge."); *Council of Commuter Orgs. v. Metro. Transp. Auth.*, 683 F.2d 663, 672 (2d. Cir. 1982) (holding where "such planning provisions are not faithfully being carried out by those on whom a SIP places responsibility, citizen suits may properly be brought to compel enforcement."); *Columbus Center*, 967 F.2d at 771 (holding commitment by New York City to mitigate carbon monoxide emissions from proposed development was an emission standard or limitation and "the citizen suit provision supports an action to enforce" the SIP.).

The Third Circuit directly addressed the issue raised in *Korleski*. In *Kean*, the court considered its jurisdiction over a citizen suit seeking to enforce an agency's obligations under the New Jersey State Implementation Plan to adopt control measures. *Kean*, 871 F.2d at 323. An industry intervenor argued that the court lacked jurisdiction over a citizen suit against an agency in its capacity as a regulator. *Id.* at 324. The *Kean* court rejected that argument and held it had jurisdiction after applying the plain meaning of the citizen suit provision and finding "no contrary indication in the legislative history" that would disallow actions against a state in its regulatory capacity. *Id.*[5]

**VII.   Conclusion.**

For the forgoing reasons, the Court should deny the Motion to Dismiss.

Dated:  June 29, 2023                          Respectfully Submitted,

                                               LAW OFFICES OF BRENT J. NEWELL

                                               /s/ Brent Newell
                                               Brent J. Newell
                                               Attorney for Plaintiffs


                                               LOZEAU DRURY, LLP

                                               /s/ Richard T. Drury
                                               Richard T. Drury
                                               Victoria Yundt
                                               Attorneys for Plaintiffs

---

[5] District Courts in the Ninth Circuit have relied on *Kean* to reject the same jurisdictional argument raised here. *See*, *e.g.*, *Oregon Envtl. Council v. Oregon Dep't of Envtl. Quality*, 775 F.Supp. 353, 361-362 (D. Or. 1991); *Communities for a Better Env't v. Cenco Refining Co.*, 180 F.Supp.2d 1062, 1079 n.2 (C.D. Cal. 2001).

CENTER ON RACE, POVERTY & THE ENVIRONMENT

/s/ Grecia Orozco
Grecia Orozco
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system on June 29, 2023, which will send notification of said filing to the attorneys of record, who are required to have registered with the Court's CM/ECF system.

/s/ Brent Newell
Brent Newell


I, Brent Newell, am a resident of the State of California, over the age of eighteen years, and not a party to this action. My business address is 245 Kentucky Street, Suite A4, Petaluma, CA 94952.

On June 29, 2023, I served **PLATINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** on the following counsel of record by placing it in a sealed, postage-paid envelope to be sent through the U.S. mails in the regular course of business:

Annette Ballatore
Isela G. Welz
San Joaquin Valley Unified Air Pollution Control District
1990 E. Gettysburg Ave.
Fresno, CA 93726

Phil M. Jay
Kahn, Soares & Conway, LLP
219 North Douty Street
Hanford, CA 93230

Bradley Hogin
Woodruff & Smart, APC
555 Anton Blvd., Suite 1200
Costa Mesa, CA 92626

I declare under penalty of perjury that the foregoing is true and correct and that this Certificate of Service was executed on June 29, 2023, in Petaluma, California.

/s/ Brent Newell
Brent Newell