Filed 07/21/2023

2023 WL 4678991
Only the Westlaw citation
is currently available.
United States District Court, E.D. California.

CENTRAL CALIFORNIA
ENVIRONMENTAL JUSTICE
NETWORK, COMMITTEE
FOR A BETTER ARVIN,
MEDICAL ADVOCATES FOR
HEALTHY AIR, and HEALTHY
ENVIRONMENT FOR ALL, Plaintiffs,
v.

LIANE RANDOLPH, in her official
capacity as Chair of the Air Resources
Board; STEVEN CLIFF, in his official
capacity as Executive Officer of the Air
Resources Board; SANDRA BERG,
JOHN EISENHUT, DANIEL SPERLING,
JOHN BALMES, DIANE TAKVORIAN,
DEAN FLOREZ, HECTOR DE LA
TORRE, DAVINA HURT, BARBARA
RIORDAN, PHIL SERNA, NORA
VARGAS, TANIA PACHECO-WERNER,
and GIDEON KRACOV, in their
official capacities as Board Members
of the Air Resources Board; CONNIE
LEYVA and EDUARDO GARCIA, in
their official capacities as Ex Officio
Board Members of the Air Resources
Board; SAN JOAQUIN VALLEY
UNIFIED AIR POLLUTION CONTROL
DISTRICT; and the GOVERNING
BOARD OF THE SAN JOAQUIN
VALLEY UNIFIED AIR POLLUTION
CONTROL DISTRICT, Defendants.

No. 2:22-cv-01714-DJC-CKD
|

**ORDER GRANTING STATE DEFENDANTS' REQUEST FOR JUDICIAL NOTICE; GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; AND WITHHOLDING SUBMISSION OF PLAINTIFFS' MOTION REGARDING DEFENDANTS' OFFER OF JUDGMENT**

Hon. Daniel J. Calabretta UNITED STATES DISTRICT JUDGE

**\*1** This case concerns California's long-running efforts to reduce air pollution in the San Joaquin Valley to levels required under the Clean Air Act. Central California Environmental Justice Network, Committee for a Better Arvin, Medical Advocates for Healthy Air, and Healthy Environment for All Lives ("Plaintiffs") move for summary judgment and seek an injunction ordering members of the California Air Resources Board ("CARB") in their official capacity ("State Defendants") and the San Joaquin Valley Unified Air Pollution Control District and its Governing Board (together referred to as "San Joaquin Valley Air Pollution Control District" or "District Defendants") to comply with the Clean Air Act and "develop, adopt, and submit [attainment contingency] measures within 180 days." (Pls.' Mem. of P. and A. in supp. of Pls.' Mot. for Summ. J. (ECF No. 17-1) at 20 ("MSJ").) State Defendants and District Defendants ("Defendants") for their part "do not contest any of the three Issues identified by Plaintiffs[,]" instead only disputing the proper remedy. (State Defs.' Mem. of P. and A. in

Opp'n to Pls.' Mot. for Summ. J. (ECF No. 21) at 1–2 ("MSJ Opp'n").)

For the reasons set forth below, the Court GRANTS Plaintiffs' Motion for Summary Judgment and orders Defendants to submit attainment contingency measures for approval by the Environmental Protection Agency ("EPA") with sufficient time for the EPA to review and approve before the December 15, 2024 final attainment decision deadline for the EPA. The Court shall retain jurisdiction to modify and ensure compliance with its order.

## BACKGROUND

### I. The Clean Air Act

The Clean Air Act of 1970, codified at 42 U.S.C. § 7401, *et seq.* authorized the EPA to establish national ambient air quality standards ("NAAQS"). *See Friends of the Earth v. Carey*, 535 F.3d 165, 168 (2d Cir. 1976) ("*Carey*"). National ambient air quality standards established by the EPA "set maximum levels for certain air-borne toxins." *Am. Lung Ass'n of N.J. v. Kean*, 871 F.2d 319, 322 (3d Cir. 1989) ("*AMA of New Jersey*"). States must attain the relevant NAAQS based on "an elaborate timetable" Congress created in the 1990 amendments because of "perceived 'widespread failure' to meet the air quality standards ...." *Hall v. U.S. E.P.A.*, 273 F.3d 1146, 1153–54 (9th Cir. 2001) (footnote omitted).

The Clean Air Act designates areas as "air quality control regions" with three possible classifications: attainment, nonattainment, and unclassifiable. *See* 42 U.S.C. § 7407(b), (d).

For nonattainment areas, the Clean Air Act further classifies them as: (1) "Marginal;" (2) "Moderate;" (3) "Serious;" (4) "Severe;" or (5) "Extreme." *See* 42 U.S.C. § 7511(a)(1). "For each area classified under this subsection, the primary standard attainment date for ozone shall be as expeditiously as practicable but not later than the date provided in [a table]." *Id.* These attainment deadlines for nonattainment areas are particularly important because failure to attain by the relevant deadline triggers automatic reclassification to a higher designation, which can expose the State to sanctions and fines, *see* 42 U.S.C. § 7511(b)(4) (consequences for a "Severe" area for failing to attain a standard); 42 U.S.C. § 7509 (consequences for a State for failing to attain a standard in general). *See generally* 42 U.S.C. §§ 7511–11f.

**\*2** States create the plans, called state implementation plans or "SIPs", that execute the goals set by the EPA and Congress. *See South Coast Air Quality Mgmt. Dist. v. E.P.A.*, 472 F.3d 882, 886 (D.C. Cir. 2006) ("*South Coast I*") (citing 42 U.S.C. § 7410). "These SIPs are promulgated by state agencies after notice and comment and must be approved by the EPA after it conducts its own notice and comment proceedings." *AMA of New Jersey*, 871 F.2d at 322 (citing 42 U.S.C. § 7410). CARB adopts and submits SIPs and SIP revisions to the EPA that are created by the local districts, such as the San Joaquin Valley Air Pollution Control District.[1] "By virtue of the States' roles in devising a strategy and adopting an implementation plan, the Supreme Court has emphasized that '[i]t is to the States that the [Clean Air] Act assigns initial and primary responsibility for deciding

what emissions reductions will be required from which sources.' " *Hall*, 273 F.3d at 1153 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 470–72 (2001)) (first alteration included; second alteration added).

"Since abatement and control of air pollution through systematic and timely attainment of the air quality standards is Congress' overriding objective, a [state implementation] plan, once adopted by a state and approved by the EPA, becomes controlling and must be carried out by the state." *Carey*, 535 F.2d at 169. A state "may not unilaterally alter the legal commitments of its SIP once [the] EPA approves the plan." *Safe Air for Everyone v. U.S. E.P.A.*, 488 F.3d 1088, 1097 (9th Cir. 2007) ("*SAFE v. EPA*") (citing 42 U.S.C. § 7416). After approval, the Clean Air Act offers few alternatives for states trying to modify their commitments. *See Carey*, 535 F.2d at 169. A state may submit revisions, reclassify to a higher designation, or attain the standard. To the extent any plan revisions are permitted, "[t]he [EPA] Administrator shall not approve a revision of a plan if the revision would interfere with any applicable requirement concerning attainment and reasonable further progress (as defined in section 7501 of this title), or any other applicable requirement of this chapter." 42 U.S.C. § 7410(*l*). The EPA Administrator may redesignate an area from nonattainment to attainment only if certain conditions are met that require the EPA Administrator to find all outstanding commitments satisfied and that the area attained the relevant standard due to "permanent and enforceable reductions in emissions ...." 42 U.S.C. § 7407(d)(3)(E). "In all other instances, the State is relegated to a lone option: compliance." *Carey*, 535 F.2d at 178 (citations omitted).

The Clean Air Act "provides a private right of action for citizens to enforce an SIP by bringing a civil action in federal district court." *Sierra Club v. U.S. E.P.A.*, 671 F.3d 955, 959 (9th Cir. 2012) (citing 42 U.S.C. § 7604) ("*Sierra Club*"). This cause of action enforcing a SIP arises under 42 U.S.C. section 7604(a). When Congress crafted the citizen-suit provision of the Clean Air Act, "Congress made clear that citizen groups are not to be treated as nuisances or troublemakers but rather as welcomed participants in the vindication of environmental interests. Fearing that administrative enforcement might falter or stall, 'the citizen suits provision reflected a deliberate choice by Congress to widen citizens access to the courts, as a supplemental and effective assurance that the Act would be implemented and enforced.' " *Carey*, 535 F.2d at 172 (quoting *Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692, 700 (D.C. Cir. 1975) ("*NRDC v. Train*")). "Citizens' suits are limited to enforcing a SIP's specific strategies, however, and may not enforce its overall objectives or aspirational goals." *El Comité Para el Bienestar de Earlimart v. U.S. E.P.A.*, 786 F.3d 688, 692 (9th Cir. 2015) ("*El Comité*") (citing *Bayview Hunters Cmty. Advocs. v. Metro. Transp. Comm'n*, 366 F.3d 692, 701 (9th Cir. 2004)).

## II. The San Joaquin Valley's Air Pollution Problem

### A. The EPA's Ozone Standards Applied to the San Joaquin Valley

**\*3** "The San Joaquin Valley is a large inland area of California extending from the Sacramento-San Joaquin Delta in the north

to the Tehachapi Mountains in the South." *Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*, 10 F.4th 937, 942 (9th Cir. 2021) ("*AIR v. EPA*"). As the Ninth Circuit recently recognized, "the [San Joaquin] Valley has long struggled to attain air quality standards for ozone." *Id.* "The Valley has long been 'an area with some of the worst air quality in the United States,' and it has repeatedly failed to meet air quality standards." *Id.* at 944 (quoting *Committee for a Better Arvin v. U.S. E.P.A.*, 786 F.3d 1169, 1173 (9th Cir. 2015)).

In brief, the EPA has revised the applicable ozone standard three times, first establishing the 1979 One-Hour Ozone standard that was replaced by the 1997 Eight-Hour Ozone standard, then by the 2008 Eight-Hour Ozone standard, then by the 2015 Eight-Hour Ozone standard, which is currently in effect.[2] While the EPA expressly revoked two of these standards (the 1979 One-Hour Ozone standard and the 1997 Eight-Hour Ozone standard), for areas that failed to satisfy the prior standards when they applied, these nonattainment areas remain subject to outstanding requirements under the prior standards because of anti-backsliding provisions in the Clean Air Act, including, relevant here, contingency measures under sections 172(c)(9) (codified at 42 U.S.C. section 7502) and 182(c)(9) (codified at 42 U.S.C. section 7511a).[3] The San Joaquin Valley is one of these nonattainment areas for the 1997 Eight-Hour Ozone standard, and thus has outstanding obligations under that standard that are at issue in the instant lawsuit. As a result, Defendants have overlapping and potentially duplicative requirements under the 1997 and 2008 Ozone standards.[4]

**B. The 1997 Eight-Hour Ozone SIP**
On September 27, 2007, CARB adopted the State Strategy for California's 2007 State Implementation Plan ("State Strategy"). (*See* Compl. ¶ 42.) On April 24, 2009, CARB adopted the Status Report on the State Strategy for California's 2007 State Implementation Plan and Proposed Revision to the SIP Reflecting Implementation of the 2007 State Strategy ("Status Report"). (*See* Compl. ¶ 44.) Each of these documents was submitted to the EPA to satisfy portions of the state implementation plan for the 1997 Eight-Hour Ozone standard.

**\*4** To clarify the State's obligations under the SIP it had proposed to the EPA, on July 21, 2011, CARB adopted Resolution 11-22, which includes "a commitment by the State to develop, adopt, and submit contingency measures by 2020 if advanced technology measures do not achieve planned reductions." (State Defs.' Resp. to Pls.' Statement of Undisputed Facts (ECF No. 21-2) No. 1 ("SOF") (undisputed) (citing Declaration of Brent Newell (ECF No. 17-8) at 1:5–6 ("Newell Decl.")); MSJ Ex. 1 (ECF No. 17-9) at 4 ("CARB Res. 11-22") (providing a copy of CARB Res. 11-22).) In light of this resolution, the EPA then proposed to approve the San Joaquin Valley's SIP revisions for the 1997 Eight-Hour Ozone standard.[5] The EPA's proposed approval was conditioned on several commitments from the San Joaquin Valley and CARB, including "the State's enforceable commitment 'to develop, adopt, and submit contingency measures by 2020 if advanced technology measures do not achieve planned reductions.' "[6] The EPA also noted that "CARB

has committed to meet annually with [the] EPA" regarding contingency measures and new technologies.[7]

In a letter dated November 18, 2011, CARB affirmed the EPA's interpretation of Resolution 11-22 to include a commitment to develop, adopt, and submit by 2020 attainment contingency measures. (*See* SOF No. 2 (undisputed) (citing Newell Decl. ¶ 4; MSJ Ex. 2 (ECF No. 17-10) at 2 ("11/18/2011 Letter from CARB to the EPA re Contingency Measures").) CARB stated in the November 18, 2011 letter to the EPA, despite some ambiguity in the language of its commitment, that "[C]ARB is making an enforceable commitment now, and this commitment is to 'develop, adopt, and submit contingency measures by 2020 if advanced technology measures do not achieve planned reductions.' " (11/18/2011 Letter from CARB to the EPA re Contingency Measures at 2.) CARB further confirmed that this commitment also included "an enforceable commitment, in accordance with sections 172(c)(9) and 182(e)(5) of the Clean Air Act, to adopt and implement specific contingency measures to be undertaken if the South Coast or San Joaquin Valley nonattainment areas fail to attain the national 8-hour ambient air quality standard for ozone by the applicable attainment date." (*Id.*)

Although section 172(c)(9) of the Clean Air Act does not state when these contingency measures must be submitted to the EPA Administrator, CARB stated that "[c]onsistent with section 182(e)(5), [C]ARB has committed to submit such contingency measures to U.S. EPA no later than three years before the applicable attainment date." (11/18/2011 Letter

from CARB to the EPA re Contingency Measures at 2.) Following this, the EPA included CARB Resolution 11-22 in the Code of Federal Regulations codifying portions of California's SIPs, which is described as including a "[c]ommitment to develop, adopt and submit by 2020 contingency measures to be implemented if advanced technology measures do not achieve the planned reductions and attainment contingency measures meeting the requirements of [Clean Air Act section] 172(c)(9), pursuant to [Clean Air Act] section 182(e)(5) as given on page 4." 40 C.F.R. § 52.220(396)(ii)(A)(2)(i). Thus, the SIP addressing the 1997 Eight-Hour Ozone standard in the San Joaquin Valley consists of the aforementioned documents, specifically including "CARB's July 2011 revisions to the Ozone SIP (CARB Resolution 11-22 (Jul. 21, 2011))." (MSJ Opp'n at 4.)

### III. Proecural History

**\*5** Plaintiffs filed the Complaint after giving Defendants sixty days written notice on July 29, 2022 as required by the Clean Air Act, 42 U.S.C. section 7604(b)(1). (*See* Compl. ¶ 11; *also* Compl. Ex. 1 (ECF No. 1-1) (providing a copy of the 7/29/2022 letter from Plaintiffs' counsel to Defendants).) After Defendants filed answers (*see* State Defs.' Answer (ECF No. 14); District Defs.' Answer (ECF No. 13)), Plaintiffs and State Defendants filed a joint scheduling report (*see* Joint Sched. Rep. (ECF No. 16) ("JSR")). In the Joint Scheduling Report, "Defendants admit that the State Implementation Plan included a commitment to develop, adopt, and submit 42 U.S.C. § 7502(c)(9) contingency measures to [the] EPA by 2020, and that this commitment is outstanding." (JSR at 2.) As Defendants framed the case: "[t]he

only issue is what, if anything, is the proper remedy in this action under the Clean Air Act, including whether jurisdiction properly lies in this Court." (*Id.* (citing 42 U.S.C. §§ 7509, 7604).)

On November 28, 2022, Plaintiffs filed their Motion for Summary Judgment. (*See* MSJ ("Motion"); Pls.' Mot. re Defs.' Judgment Offer or to Quash Service of Judgment (ECF No. 20-1) at 4 ("Rule 68 Motion" or "Rule 68 Mot.").) On March 28, 2023, after the Motion for Summary Judgment was fully briefed, State Defendants filed a Request for Judicial Notice (*see* ECF No. 30 (motion for administrative relief to file request for judicial notice); ECF No. 30-1 at 1–4 (request for judicial notice); ECF No. 30-1 at 5–48 ("Draft EPA Guidance on Nonattainment Area SIP Contingency Measures")), which Plaintiffs opposed (*see* ECF No. 31).

On April 4, 2023, Plaintiffs' case was reassigned to this Court. (*See* ECF No. 32.) On April 27, 2023, Plaintiffs filed a motion for an expedited decision regarding the outstanding Motion for Summary Judgment. (*See* ECF No. 34.) The Court denied the motion as moot because the Court ordered oral arguments on all outstanding motions (i.e., the Motion for Summary Judgment, the Rule 68 Motion, and the Request for Judicial Notice) for July 6, 2023. (*See* ECF No. 35.) The Court also granted the Parties' stipulation that Committee for a Better Arvin file a supplemental standing declaration, which Plaintiffs filed on June 20, 2023. (*See* ECF No 37 (order); ECF No. 38 (supplemental declaration).) Following oral argument, the Court also granted Defendants the option of providing updates on any progress towards proposing attainment contingency measures for the 1997 Eight-Hour Ozone standard for the EPA to approve. (*See* ECF No. 39.) Defendants filed a supplemental declaration from Sylvia Vanderspek. (*See* Decl. in Opp'n to Pls.' Mot. for Summ. J. (ECF No. 40) ("Supplemental Vanderspek Declaration" or "Vanderspek Suppl. Decl.").) The motions are now fully briefed and argued.

## ANALYSIS

## I. Request for Judicial Notice

### A. Standard

Only one rule covers judicial notice, Federal Rule of Evidence 201, which governs "judicial notice of an adjudicative fact only, not a legislative fact." Fed. R. Evid. 201(a). Courts may take judicial notice of an adjudicative fact that is "not subject to reasonable dispute." Fed. R. Evid. 201(b); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 994 (9th Cir. 2018) ("clarify[ing] when it is proper to take judicial notice of facts in documents, or to incorporate by reference documents in a complaint, and when it is not[ ]"). A fact is "not subject to reasonable dispute" if it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may therefore take judicial notice of matters of public record, but the court may not take judicial notice of disputed facts contained in those public records. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d

984, 999 (9th Cir. 2011) (finding that financial reports submitted by Ernst and Young were not judicially noticeable because Ernst and Young's compliance with the Higher Education Act was an "open question[ ] requiring further factual development[ ]"). However, the court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

### B. Analysis
**\*6**  Defendants ask this Court to take judicial notice of draft EPA guidance made in response to the Ninth Circuit's decision in *AIR v. EPA*, 10 F.4th at 937, proposing to change the method of calculating progress for contingency measures. (*See* ECF No. 30 at 3; *generally* Draft EPA Guidance on Nonattainment Area SIP Contingency Measures.) Plaintiffs oppose, first arguing that Defendants are procedurally barred from making such motions at this time, and second arguing that Defendants are precluded from introducing such evidence because it is not relevant. (*See* ECF No. 31 at 2–3.) Plaintiffs' objections are without merit.

Regarding Plaintiff's procedural objection, local rules cannot trump the federal rules. *See Marshall v. Gates*, 44 F.3d 722, 724 (9th Cir. 1995) (quoting Fed. R. Civ. P. 83). "A local rule must be consistent with—but not duplicate —federal statutes and rules ...." Fed. R. Civ. P. 83(a)(1). Federal Rule of Evidence 201, the only rule governing judicial notice, states that the court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c) (2). "The court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d). Therefore, if Defendants request judicial notice

of information and Defendants supply the information to grant such a request, this Court must grant it.

Plaintiffs' second objection regarding the substantive relevance of the EPA's draft guidance similarly has no merit. First, the United States Code clearly states that "[t]he contents of the Federal Register shall be judicially noticed ...." 44 U.S.C. § 1507. Second, the Ninth Circuit has previously granted a request to take judicial notice of a proposed rulemaking published in the Federal Register, as here. *See Bayview*, 366 F.3d at 702 n.5.

### C. Conclusion
Because Defendants have requested this Court to take judicial notice of the draft EPA guidance and have provided the material for doing so, the Court GRANTS Defendants' Motion for Administrative Relief and GRANTS Defendants' Request for Judicial Notice. Accordingly, the Court takes judicial notice of the entire draft EPA guidance.

## II. Motion for Summary Judgment

### A. Standard
The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "threshold inquiry" is whether "there are any genuine factual issues

that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party" or conversely "whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986). Here, no facts are disputed. (*See generally* SOF Nos. 1–8.)

**B. Analysis**

Plaintiffs identify three issues in their Motion for Summary Judgment. (*See* MSJ at 1–2 (providing a Statement of Issues).) First, Plaintiffs ask this Court to determine "[w]hether the commitment in the State Implementation Plan to develop, adopt, and submit by 2020 attainment contingency measures and advanced technology contingency measures is an emission standard or limitation and an enforceable strategy." (*Id.* at 1.) Second, Plaintiffs ask this Court to determine "[w]hether Defendants violated an emission standard or limitation when Defendants failed to develop, adopt, and submit attainment contingency measures." (*Id.* at 2.) Third, Plaintiffs ask "[w]hether the Court should order Defendants to develop, adopt, and submit the attainment contingency measures." (*Id.*) "Defendants do not contest any of the three Issues identified by Plaintiffs.... Rather, the only disputed issue before the Court is ...: [ ] To the extent the Court determines judgment is warranted, what is the proper remedy?" (MSJ Opp'n at 2 (citation omitted).)

**1. Plaintiffs Have Established Article III Standing to Sue.**

**\*7** While none of the Defendants currently raises the issue of whether Plaintiffs have standing, Article III courts "have 'an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties.' " *Central Sierra Env't Resources Ctr. v. Stanislaus Nat'l Forest*, 30 F.4th 929, 937 (9th Cir. 2022) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 489 (2009)). Federal courts have this independent obligation because "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III[,]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and "[t]he 'law of Art[icle] III standing is built on a single basic idea—the idea of separation of powers.' " *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 (1997) (internal quotation marks omitted)). Nonetheless, the Court finds that Plaintiffs have established standing.

The Supreme Court has "established that the irreducible minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. "To establish Article III standing, a plaintiff must show (1) that it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *AIR v. EPA*, 10 F.4th at 943 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)) (internal quotation marks omitted). "An association has standing to bring

suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth*, 528 U.S. at 171 (citing *Hunt v. Wash. St. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

The party invoking federal jurisdiction bears the burden of establishing standing. *See TransUnion*, 141 S. Ct. at 2201–02 (citing *Lujan*, 504 U.S. at 561). "But standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 459 n.6 (1996). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (citations omitted). Every party invoking a federal court's jurisdiction must assert standing, and "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*, 141 S. Ct. at 2208 (citing *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 733 (2008); *Friends of the Earth*, 528 U.S. at 185).

Here, Plaintiffs comprise four environmental organizations seeking declaratory and injunctive relief against Defendants: (1) Central California Environmental Justice Network, (2) Committee for a Better Arvin, (3) Medical Advocates for a Healthy Air, and (4) Healthy Environment for All. Each must establish standing individually as an organization and for at least one of its members. All four do.

At summary judgment, the Ninth Circuit has observed that declarations from members can be sufficient to establish their individual Article III standing. *Central Sierra*, 30 F.4th at 937. (*See also* Declaration of Nayamin Martinez (ECF No. 17-4) ("Martinez Decl.") (establishing standing for Central California Environmental Justice Network); Declaration of Estela Escoto (ECF No. 38) ("Escoto Decl.") (establishing standing for Committee for a Better Arvin); Declaration of Kevin Hamilton (ECF No. 17-6) ("Hamilton Decl.") (establishing standing for Medical Advocates for Healthy Air); Declaration of Veronica Aguirre (ECF No. 17-7) ("Aguirre Decl.") (establishing standing for Healthy Environment for All).) Addressing the second and third requirements for the associational or organizational standing of Plaintiffs, none of the individual members are needed for declaratory or injunctive relief, and violations of the Clean Air Act are germane to their missions as environmental organizations. *See Central Sierra*, 30 F.4th at 937. (*See also* Martinez Decl. ¶¶ 3–4 (establishing Central California Environmental Justice Network's mission); Escoto Decl. ¶¶ 3–5 (establishing Committee for a Better Arvin's mission); Hamilton Decl. ¶ 2 (establishing Medical Advocates for Healthy Air's mission); Aguirre Decl. ¶ 3 (establishing Healthy Environment for All's mission).) All that remains is for each Plaintiff to prove that at least one member of its organization has standing, which each does. *See Central Sierra*, 30 F.4th at 937; *AIR v. EPA*, 10 F.4th at 943.

**\*8** Courts have held "that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth*, 528 U.S. at 182 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)). Applying that reasoning, the Ninth Circuit has explained that "evidence of a credible threat to the plaintiff's physical well-being from airborne pollutants falls well within the range of injuries to cognizable interests that may confer standing." *AIR v. EPA*, 10 F.4th at 943 (quoting *Hall v. Norton*, 266 F.3d 969, 976 (9th Cir. 2001)). Here, each Plaintiff organization has credibly declared that one of its members will suffer adverse health effects, incurred additional costs, and will not be able to enjoy the same activities outside as before because of worsening air pollution. (*See* Martinez Decl. ¶¶ 7–13; Escoto Decl. ¶¶ 8–10; Hamilton Decl. ¶¶ 10, 13–22; Aguirre Decl. ¶¶ 5–8.) Therefore, each Plaintiff has established an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical.

Plaintiffs each also satisfy the final two elements of Article III standing of traceability and redressability. The Ninth Circuit has already held that inadequate contingency measures that must be implemented should the San Joaquin Valley fail to meet attainment satisfy the traceability and redressability requirements of standing given "[t]he threat that the Valley will continue to fail to meet the ozone standard—and therefore that the contingency measure will be activated—is neither conjectural nor hypothetical, but

a reasonable inference from the historical record." *AIR v. EPA*, 10 F.4th at 944. Thus, Plaintiffs have established standing to sue.

## 2. Defendants Adopted an Enforceable Commitment to Develop Contingency Measures.

The Clean Air Act provides a cause of action for citizens against any individual or entity "to the extent permitted by the Eleventh Amendment" to, relevant here, enforce an "emission standard or limitation" under the Clean Air Act. *See* 42 U.S.C. § 7604(a)(1). "The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation ... and to apply any appropriate civil penalties (except for actions [against the EPA Administrator])." 42 U.S.C. § 7604(a). The Clean Air Act broadly defines an "emission standard or limitation." *See* 42 U.S.C. § 7604(f). However, just because there appears to be an emission standard or limitation that falls within the scope of the applicable SIP does not automatically make it a specific and therefore enforceable SIP strategy or measure as opposed to the SIP's overall objectives or aspirational goals. *See Bayview Hunters*, 366 F.3d at 701. Ultimately, enforcing a SIP is a matter of interpretation.

"In interpretating a SIP, [courts] begin with a look toward the plain meaning of the plan and stop there if the language is clear." *SAFE v. EPA*, 488 F.3d at 1095. Courts interpret SIPs "based on their plain meaning when such a meaning is apparent, not absurd, and not contradicted by the manifest intent of

[the] EPA, as expressed in the promulgating documents available to the public." *Id.* at 1100. When a SIP is ambiguous, courts "defer to [the] EPA's interpretation if it is reasonable." *El Comité*, 786 F.3d at 696. And courts interpret the SIP "in light of the overall statutory and regulatory scheme." *Id.* at 696–97 (quoting *Bayview Hinters*, 366 F.3d at 701). Courts have referred to the proposed notices of approval, the final action approving the SIP, the Code of Federal Regulations, and the materials cited within those publicly available sources when interpreting the scope of an SIP and its enforceable commitments. *See, e.g.*, *El Comité Para El Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062, 1067–68 (9th Cir. 2008). When determining what constitutes a commitment that is enforceable by a district court, the Ninth Circuit has focused on whether the specific language of the SIP is mandatory and non-discretionary or permissive, and whether the strategy or goal at issue is within the control of the State or relevant agency. *See Committee for a Better Arvin*, 786 F.3d at 1179–80.

**\*9** There can be no question that Defendants committed the San Joaquin Valley to an enforceable emission standard or limitation actionable under the Clean Air Act's citizen-suit provision, and Defendants concede this point. (*See* MSJ Opp'n at 1–2.) The EPA's final approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP in 2012 relied on submissions in Defendants' 2011 proposed SIP revisions that "contain[ed] the State's enforceable commitment 'to develop, adopt, and submit contingency measures by 2020 ... and in a letter dated November 18, 2011 ..., CARB confirmed that [the] EPA's understanding of this enforceable commitment

is correct."[8] The EPA, CARB, and this Court understand the plain text of the final approval to provide an enforceable commitment.[9] The question is what the scope of this commitment is and therefore the scope of any order enforcing this commitment. (*See* MSJ Opp'n at 6–8.)

Defendants do not contest that the minimum scope of the commitment is to craft contingency measures, but they argue that there is no substantive scope to that commitment. (*See* MSJ Opp'n at 6.) That is, Defendants argue that all that can be compelled here is what is stated in the Code of Federal Regulations: a "[c]ommitment to develop, adopt and submit by 2020 contingency measures to be implemented if advanced technology measures do not achieve the planned reductions and attainment contingency measures meeting the requirements of [42 U.S.C. section 7502(c)(9)], pursuant to [42 U.S.C. section 7511a(e)(5)] as given on page 4." 40 C.F.R. § 52.220(396)(ii)(A)(2)(i). Plaintiffs ask this Court to go further, however, arguing that "the commitment broadly includes applicable contingency measure requirements, which EPA interpreted in the notice of proposed rulemaking made available to the public." (ECF No. 26 at 2–3 (Plaintiffs' Reply).) Plaintiffs' proposed order suggests language directing Defendants to develop, adopt and submit attainment contingency measures "to achieve reductions of 3 percent of the adjusted 2002 base year inventory ... no later than 180 days from the date of this order." (ECF No. 17-3 at 2.)

Plaintiffs, however, are unable to point to language evincing a commitment to adopt

contingency measures to achieve a three percent reduction. First, Plaintiffs point to language in the portion of the EPA's proposed approval of California's SIP governing contingency measures where the EPA noted that "[a]dditional guidance on the [Clean Air Act] contingency measure provisions is found in the General Preamble at 13510–13512 and 13530."[10] The EPA's proposed approval went on to say that the "guidance indicates that states should adopt and submit contingency measures sufficient to provide a 3 percent emissions reduction ...."[11] As an initial matter, however, the General Preamble was intended to "provide the public with advance notice of how EPA *generally intends* to interpret various requirements and associated issues that have arisen under title I of the [Clean Air Act Amendments of 1990]."[12] This language suggests that the three percent standard for contingency measures is general guidance that is more akin to an aspirational goal, *see Citizens for a Better Environment v. Deukmejian*, 731 F. Supp. 1448, 1459–61 and n.21 (N.D. Cal. 1990), rather than an enforceable obligation. Indeed, the summary to the General Preamble itself proclaims that these are "preliminary interpretations, and thus do not bind the States and the public as a matter of law."[13]

 **\*10** Turning to the specific language in the EPA's proposal approving California's SIP that "states should adopt and submit contingency measures sufficient to provide a 3 percent emissions reduction ... [,]"[14] this language is likewise not binding or mandatory. The language is not directed at California specifically, despite being in a proposal approving California's SIP, and uses

the word "should," rather than more mandatory language. Consistent with the reference to the General Preamble immediately preceding this sentence, this language is not an enforceable strategy.

At oral argument, Plaintiffs pointed to language in section F.3 of the proposed rule to approve the SIP at issue that discussed contingency measures in a manner that appeared to suggest a three percent requirement.[15] There, the EPA noted that a Reasonable Further Progress demonstration it proposed to approve had sufficient excess reductions of nitrogen oxide ("NO$_X$") "to provide *the 3 percent* of adjusted baseline emissions reductions needed to meet the [Reasonable Further Progress] contingency measure requirement for 2011, 2014, 2017 and 2020."[16] According to Plaintiffs, the EPA's statement that it was approving these contingency measures "based in part on CARB's commitment to submit by 2020 additional contingency measures meeting the requirements of" section 172(c)(9) of the Clean Air Act should be interpreted to likewise require a three percent reduction in baseline emissions. However, as Defendants pointed out, footnote 36 belies that conclusion, with the EPA stating that these contingency measures "should, at a minimum, ensure that an *appropriate level* of emissions reduction progress continues to be made if attainment is not achieved and additional planning by the State is needed."[17] With this context, it is clear that the language cited by Plaintiffs does not constitute an enforceable commitment.

The applicable SIP required that California "develop, adopt and submit by 2020 ... attainment contingency measures meeting the

requirements of [Clean Air Act section] 172(c) (9) ....” 40 C.F.R. § 52.220(396)(ii)(A)(2)(i). The Court finds that the SIP only requires that such contingency measures have been submitted by 2020 and lacks any substantive requirement that this Court may impose.

**3. Defendants Violated the Enforceable Commitment.**

As stated before, Defendants have never contested liability, only questioning the scope of the remedy, which was implicitly a challenge to the scope of the SIP and the enforceable scope of the citizen-suit provision. (*Compare with* State Defs.’ Answer at 9 (fourth affirmative defense claiming that “[t]he Court lacks subject matter jurisdiction because the Clean Air Act citizen suit provision does not authorize suits against [S]tates for failure to adopt control measures[ ]”).)

**C. Conclusion**

For the reasons set forth above, the Court finds that Defendants made an enforceable “[c]ommitment to develop, adopt and submit by 2020 ... attainment contingency measures meeting the requirements of [Clean Air Act section] 172(c)(9) ....” 40 C.F.R. § 52.220(396)(ii)(A)(2)(i). The EPA has adopted that commitment, which now has the force of federal law. Defendants have violated this duty by failing to craft such contingency measures, and the Court will issue a remedial order to enforce this requirement.

**III. Motion to Quash Offer of Judgment as Null and Void**

**\*11** On December 19, 2022, Plaintiffs claim that “Defendants attempted to invoke Rule 68 of the Federal Rules of Civil Procedure (‘Rule 68’) by emailing the Offer of Judgment to counsel for [Plaintiffs].” (Rule 68 Mot. at 2.) Plaintiffs seek to nullify and void the Offer of Judgment. (*See id.*) This is mostly a dispute about future recoverable fees available to Plaintiffs’ counsel following the Offer of Judgment. (*See* Rule 68 Mot. at 4–11; ECF No. 27 at 7–8 (Defendants’ Opposition to Plaintiffs’ Rule 68 Motion).) At oral argument, the Court advised Plaintiffs that it was unclear whether Plaintiffs’ Rule 68 Motion was ripe and that it might potentially be mooted out by the Court's decision. As such, the Court suggested to Plaintiffs that the Court withhold submission and a decision on the Rule 68 Motion until shortly after issuing a decision on Plaintiffs’ Motion for Summary Judgment. Plaintiffs concurred, indicating that they would alert the Court should Plaintiffs need a decision on the Rule 68 Motion. Defendants did not object to this approach.

Accordingly, the Court is withholding submission on Plaintiffs’ Rule 68 Motion at this time. Within thirty days of this Order, Plaintiffs should inform the Court whether the issues raised in their Rule 68 Motion are now ripe for adjudication.

**IV. Remedy**

When this Motion for Summary Judgment was filed, the parties had a significant disagreement regarding the timing of any Court order, with the Plaintiffs requesting that Defendants

be ordered to submit attainment contingency measures to the EPA within six months, and State Defendants arguing that they are entitled to eighteen months, corresponding to the period provided by the Clean Air Act for a State to remedy a finding that a State has failed to timely submit a required element of a SIP before the EPA can implement sanctions, see 42 U.S.C. § 7509(a). However, after oral argument, Defendants submitted the Supplemental Declaration of Sylvia Vanderspek (ECF No. 40), the Chief of the Air Quality Planning and Sciences Division at CARB and "the lead manager responsible for CARB's Clean Air Act state implementation planning, including developing and submitting contingency measures ...." (Declaration of Sylvia Vanderspek (ECF No. 21-1) at ¶¶ 2–3.) In her Supplemental Declaration, Ms. Vanderspek indicated that CARB had been able to identify a contingency measure that it anticipates submitting to the EPA by the end of November, and that she was "confident CARB can submit the planned contingency measure to [the] EPA by the end of January 2024." (*See generally* Vanderspek Suppl. Decl.) While the Court is cognizant of the fact that Plaintiffs submitted their draft order in November 2022, the end of January 2024 is roughly six months after the imposition of this Order as requested by Plaintiffs in that Order. Considering the equitable factors cited by Plaintiffs (MSJ Opp'n at 12 (citing *NRDC v. Train*; *Sierra Club v. Thomas*, 658 F. Supp. 165, 170 (N.D. Cal. 1987); *Ass'n of Irritated Residents v. United States Env't Prot. Agency*, No. 18-cv-01604-YGR, 2018 WL 354885, at *1 (N.D. Cal. July 24, 2018))), specifically including the June 15, 2024 attainment deadline and the December 15, 2024 date by which time the EPA

Administrator must determine whether an area has met attainment, see 42 U.S.C. § 7511(b)(2), the Court concludes that requiring Defendants to submit its proposed contingency measures by January 31, 2024, along with interim status reports, is reasonable.

## ORDER

Based on the foregoing, the Court concludes that Defendants are in violation of the Clean Air Act because of their failure to timely develop, adopt, and submit attainment contingency measures meeting the requirements of section 172(c)(9), 42 U.S.C. § 7502(c)(9), as required by the 1997 Eight-Hour Ozone state implementation plan, 40 C.F.R. § 52.220(396)(ii)(a)(2)(i), which constitutes a violation of "an emission standard or limitation under this chapter" within the meaning of 42 U.S.C. section 7604(a)(1). Defendants are hereby ORDERED to develop, adopt, and submit attainment contingency measures meeting the requirements of 42 U.S.C. section 7502(c)(9) by no later than January 31, 2024.

**\*12** To ensure Defendants meet this deadline, the Court ORDERS Defendants to file with the Court the conceptual document that will be posted for public review that is referenced in paragraph four of the Supplemental Vanderspek Declaration, as well as the proposed measure to be considered by CARB's Board, within three days of their being made available to the public. The Court SETS a status conference for October 5, 2023 at 1:30 PM, and ORDERS the Parties to submit a Joint Status Report by September 28, 2023.

The Court further ORDERS Plaintiffs to indicate to the Court within thirty days of this Order whether the issues raised in the Rule 68 Motion are moot.

The Court will retain jurisdiction over this matter.

IT IS SO ORDERED.

Dated: **July 20, 2023**

**All Citations**

Slip Copy, 2023 WL 4678991

## Footnotes

1    *See* Clean Air Plans; 2008 8-Hour Ozone Nonattainment Area Requirements; San Joaquin Valley, California, 83 Fed. Reg. 44,528, 44,529 (proposed Aug. 31, 2018) (codified at 40 C.F.R. Part 52) ("2018 Proposed Partial Approval of San Joaquin Valley's 2008 Eight-Hour Ozone Plan").

2    *See* Review of the Ozone National Ambient Air Quality Standards, 85 Fed. Reg. 87,256, 87,259–60 (Dec. 31, 2020) (codified at 40 C.F.R. Part 50) (final action explaining history of air quality standards).

3    *See* Implementation of the 2008 National Ambient Air Quality Standards for Ozone: State Implementation Plan Requirements, 80 Fed. Reg. 12,264, 12,285, 12,296 (Mar. 6, 2015) (codified at 40 C.F.R. Parts 50–52 and 70–71) ("Final 2008 Eight-Hour Ozone Implementation Rule").

4    *See* Withdrawal and Partial Approval/Partial Disapproval of Clean Air Plans; San Joaquin Valley, California; Contingency Measures for 2008 Ozone Standards, 87 Fed. Reg. 59,688, 59,690 (Oct. 3, 2022) (codified at 40 C.F.R. Part 52) (taking final action to disapprove the submitted contingency measures in light of *AIR v. EPA*). *Contrast with* Final 2008 Eight-Hour Ozone Implementation Rule, 80 Fed. Reg. at 12,297 ("In this time of diminished resources, the [S]tates and the EPA need to move forward efficiently without being overburdened by unnecessary paperwork requirements arising from former standards that can detract from efficient movement towards more stringent standards.").

5    *See* Approval of Air Quality Implementation Plans; California; San Joaquin Valley; Attainment Plan for 1997 8-Hour Ozone Standard, 76 Fed. Reg. 57,846 (proposed Sept. 16, 2011) (codified at 40 C.F.R. Part 52) ("2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions").

6    2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions, 76 Fed. Reg. at 57,855 (quoting CARB Res. 11-22); *see also id.* at 57,864 ("[W]e propose to approve CARB's enforceable commitment to submit, no later than 2020, additional contingency measures under CAA section 182(e)(5) that meet the requirements for attainment contingency measures in CAA section 172(c)(9), in addition to contingency measures to be implemented if the anticipated long-term measures approved pursuant to section 182(e)(5) do not achieve planned reductions." (footnote omitted) (citing CARB Res. 11-22)).

7    2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP, 76 Fed. Reg. at 57,855; *see* Approval of Air Quality Implementation Plans; California; San Joaquin Valley; Attainment Plan for 1997 8-Hour Ozone Standards, 77 Fed. Reg. 12,652, 12,654 (Mar. 1, 2012) (codified at 40 C.F.R. Part 52) ("2012 Final Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions").

8    2012 Final Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP, 77 Fed. Reg. at 12,664.

9    *See* 2012 Final Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP, 77 Fed. Reg. at 12,664 ("With respect to the requirement for contingency measures ..., CARB confirmed that [the] EPA's understanding of this is correct." (citing CARB Res. 11-22; 11/18/2011 Letter from CARB to the EPA re Contingency Measures; Status Report at 25–27)).

10    2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions, 76 Fed. Reg. at 57,863.

11    2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions, 76 Fed. Reg. at 57,863).

12    State Implementation Plans; General Preamble for the Implementation of Title I of the Clean Air Act Amendments of 1990, 57 Fed. Reg. 13,498, 13,499 (Apr. 16, 1992) (codified at 40 C.F.R. Part 52) ("General Preamble to the Clean Air Act of 1990") (emphasis added).

13    General Preamble to the Clean Air Act of 1990, 57 Fed. Reg. at 13,498.

14    2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions, 76 Fed. Reg. at 57,863.

15    *See* 2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions, 76 Fed. Reg. at 57,864 and n.36.

16    2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions, 76 Fed. Reg. at 57,864 (emphasis added).

17    2011 Proposed Approval of the San Joaquin Valley's 1997 Eight-Hour Ozone SIP Revisions, 76 Fed. Reg. at 57,864 n.36 (emphasis added) (citing General Preamble to the Clean Air Act of 1990, 57 Fed. Reg. at 13,524).

---

**End of Document**                                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.