UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY AIR QUALITY COALITION, a fiscally sponsored project of Social and Environmental Entrepreneurs, Inc., COMMITTEE FOR A BETTER ARVIN, a nonprofit corporation, COMMITTEE FOR A BETTER SHAFTER, a nonprofit corporation, DELANO GUARDIANS, an unincorporated association, and SOCIAL AND ENVIRONMENTAL ENTREPRENEURS, INC., a nonprofit corporation, | No. 1:23-cv-00794-KES-SKO<br><br>ORDER DENYING MOTION TO DISMISS<br><br>(Doc. 8) |
| Plaintiffs, | |
| v. | |
| SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT, and the GOVERNING BOARD OF THE SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT, | |
| Defendants. | |

This is an action brought by plaintiffs Central Valley Air Quality Coalition, Committee for a Better Arvin, Committee for a Better Shafter, Delano Guardians, and Social and Environmental Entrepreneurs, Inc. against defendants San Joaquin Valley Unified Air Pollution Control District and its governing board (collectively, "the Air District") pursuant to the citizen-

1

suit provision of the Clean Air Act, 42 U.S.C. § 7604(a)(1).  Compl. ¶¶ 15–21, 121–165.  The Air District moves to dismiss on the sole ground that the Clean Air Act's citizen-suit provision does not authorize suits against it in its capacity as a regulator.  Doc. 8 ("MTD") at 15–25.  As addressed below, the Air District's argument is inconsistent with binding Ninth Circuit authority.  The Air District's motion is denied.

I.    **Background**

a.    **Regulatory Framework and the San Joaquin Valley's Air Pollution Problem**

The Clean Air Act (the "CAA") created "an intergovernmental partnership to regulate air quality in the United States," and since its enactment, has operated as an "experiment in federalism." *Michigan v. EPA*, 268 F.3d 1075, 1078 (D.C. Cir. 2001) (quotations omitted).  At the federal level, the EPA is charged with setting the national ambient air quality standards ("NAAQS") for several air pollutants at levels that will protect the public health and welfare. *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 308 (2014) (citing 42 U.S.C. §§ 7408–7409).  States, on the other hand, must prepare state implementation plans ("SIPs") to attain and maintain the NAAQS.  *Id.* (citing 42 U.S.C. § 7410).

To develop a SIP, a state must inventory sources of emissions within its borders and project their growth, then decide on strategies to control emissions and how to allocate the burden of lowering them.  42 U.S.C. § 7410(a); *see Train v. Nat. Res. Def. Council, Inc.* , 421 U.S. 60, 79–87 (1975) (states have discretion to choose the appropriate methods for attaining the NAAQS).  SIPs must include "enforceable emission limitations" and "control measures, means or techniques" designed to achieve the NAAQS.  42 U.S.C. § 7410(a)(2).  The EPA must review each state's SIP, 42 U.S.C. § 7410, and if the EPA approves it, the SIP "becomes controlling and must be carried out by the state." *Friends of the Earth v. Carey*, 535 F.2d 165, 169 (2d Cir. 1976).

The EPA divides the nation into air quality control regions ("AQCRs"), and AQCRs are categorized as either "attainment areas" or "nonattainment areas"—meaning that they either meet the NAAQS or do not.  42 U.S.C. § 7407.  "There are several degrees of nonattainment, ranging from marginal to extreme, . . .  and each classification imposes increasingly stringent

requirements to reduce emissions and promote progress toward attainment." *Ass'n of Irritated Residents v. U.S. E.P.A.*, 10 F.4th 937, 941 (9th Cir. 2021) (citing 42 U.S.C. § 7511a(1), (b)(1)(A), (c)(2)(B), (d), (e)) (citation omitted).

The San Joaquin Valley Air Basin (the "Valley") is an AQCR that "has long [had] . . . some of the worst air quality in the United States, and it has repeatedly failed to meet air quality standards." *Id.* at 944 (citation omitted); Doc. 1 ("Compl.") ¶ 38.[1] The Valley is currently designated "extreme" nonattainment for the 1997, 2008, and 2015 ozone NAAQS and "serious" nonattainment for the 1997, 2006, and 2012 $PM_{2.5}$ NAAQS.[2] 40 C.F.R. § 81.305 (2023).

California law assigns air quality management districts, such as defendant San Joaquin Valley Unified Air Pollution Control District, the responsibility for controlling air pollution from stationary sources like oil refineries and natural gas power plants. Cal. Health & Safety Code § 40000 *et seq.*; Compl. ¶¶ 30, 37. California law assigns the California Air Resources Board ("CARB") the responsibility for controlling air pollution from mobile sources like automobiles, planes, and heavy-duty trucks. Cal. Health & Safety Code § 40000 *et seq.* Together, the air

---

[1] As addressed below, the allegations in the complaint are taken as true for purposes of the Air District's motion to dismiss, which is a facial challenge to subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

[2] The Air District requests judicial notice of an excerpt of its Annual Report to the Community (2021-22) which explains, among other things, emissions reductions that have purportedly occurred in the past thirty years in the Valley. Doc. 9 at 2. Plaintiffs oppose this request because "a court cannot take judicial notice of disputed facts contained in [] public records" under Federal Rule of Evidence 201. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). While plaintiffs do not specifically explain which portions of the report they dispute, it does appear that some of the allegations in the complaint might be at odds with assertions made in the Annual Report. For example, the Annual Report claims that "stationary source emissions . . . have been reduced by over 93% since 1980." Doc. 9, Ex. D at 61. Given that plaintiffs allege that the Air District inaccurately claimed to have reduced certain emissions by awarding emission reduction credits for things that were non-creditable under existing law, *see* Compl. ¶¶ 82–117, 121–131, it appears that assertions like this could be in dispute.

In any event, the Air District requests judicial notice of the Annual Report only for background information, *see* Doc. 14 at 2–3, and this background information is not necessary for purposes of deciding the legal issue presented in the Air District's motion. *See City of Royal Oak Retirement System v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1059–60 (N.D. Cal. 2012) (declining to take judicial notice of reports that were not necessary to consider to rule on the motion); *Nguyen v. Bonta*, 675 F. Supp. 3d 1065, 1068 n.1 (S.D. Cal. 2023) (same). The Court therefore declines to take judicial notice of the Annual Report.

3

districts and CARB develop California's SIP. *See id.*; 40 C.F.R. § 52.220 (2025).

The CAA requires that a SIP prepared for a nonattainment area must contain a "new source review" permit program ("NSR Program") for new and modified stationary sources. 42 U.S.C. § 7502(c). Each NSR Program must contain provisions which require all new and modified stationary sources to obtain a permit from the air quality management district, and the air quality management district must deny those sources a permit unless they sufficiently "offset" their emissions of air pollutants for which the AQCR is in nonattainment. 42 U.S.C. § 7503(a)(1); Cal. Health & Safety Code § 40920.5. A stationary source can create offsets of emissions by decommissioning pieces of existing equipment, curtailing production or operating hours, or installing pollution control equipment not otherwise required by existing regulations. 40 C.F.R. § 51.165(a)(3)(ii)(C)(1) (2016). Offsets must be real, quantifiable, surplus, permanent, and enforceable. *See* San Joaquin Valley Unified Air Pollution Control District Regulation II, Rule 2201 § 3.2.1, https://ww2.valleyair.org/media/zzslqswt/rule-2201.pdf.[3] The surplus requirement ensures that the offsets were not already required by other provisions of the CAA or its implementing regulations. *See id.* § 3.2.2.

The EPA and the Air District measure the surplus value of offsets at different points in time. *See* Rule 2201 § 7.0; Compl. ¶ 53. Given that events that occur between these two points in time can sometimes diminish the surplus value of an offset that was recorded at an earlier time, the EPA required the Air District to adopt an Annual Offset Equivalency Tracking System (the "Tracking System") to calculate these differences and remedy any shortfalls. *See* Rule 2201 § 7.4; Compl. ¶¶ 54–67. The Tracking System has been in place since the EPA approved it as part of California's SIP in 2004. 69 Fed. Reg. 7330 (May 17, 2004) (to be codified at 48 C.F.R. pt. 1); Compl. ¶¶ 68–71.

---

[3] The Air District requests judicial notice of its Rule 2201. Doc. 9 at 2. Under Federal Rule Evidence 201(b), the Court may take judicial notice of official enactments and regulations issued by any public entity. *See Ecological Rts. v. Pac. Gas & Elec. Co.* 874 F.3d 1083, 1100 (9th Cir. 2017). Plaintiffs do not oppose judicial notice of Rule 2201. *See* Doc. 12 at 2; Compl. ¶ 50 (citing Rule 2201). As Rule 2201 is an enactment of a government agency, the Court grants the Air District's request for judicial notice of Rule 2201.

**b.  Factual Background**

On May 24, 2023, plaintiffs Central Valley Air Quality Coalition, Committee for a Better Arvin, Committee for a Better Shafter, Delano Guardians, and Social and Environmental Entrepreneurs, Inc., a group of five environmental justice organizations, filed this suit against the Air District and its governing board pursuant to the citizen-suit provision of the Clean Air Act, 42 U.S.C. § 7604(a)(1).  Compl. ¶¶ 15–21, 121–165.  Plaintiffs allege that, although the EPA reclassified the Valley as an extreme ozone nonattainment area in 2004, until 2010 the Air District failed to require offsets at the ratio mandated for extreme ozone nonattainment areas.  *Id.* ¶¶ 72–81.  In addition, plaintiffs allege that, since 2007, the Air District counted as offsets certain emissions reductions that were not actually creditable under existing law to claim that it had demonstrated equivalency under the Tracking System.  *Id.* ¶¶ 82–120.  Through these failures and several related ones, plaintiffs allege that the Air District violated an "emission standard or limitation" within the meaning of 42 U.S.C. § 7604(a)(1).  *Id.* ¶¶ 121–165.

The Air District moved to dismiss, arguing that the CAA's citizen-suit provision does not authorize suits against the Air District in its capacity as a regulator.  MTD at 15–24.  The Air District relies heavily on the reasoning in *Sierra Club v. Korleski*, 681 F.3d 342 (6th Cir. 2012).  *Id.*  Plaintiffs filed an opposition, arguing that the Ninth Circuit has found that the CAA's citizen-suit provision authorizes suits against such a governmental regulator.  Doc. 11 ("Opp'n") (citing, *e.g.*, *Committee for a Better Arvin v. U.S. E.P.A.* ("*Arvin*"), 786 F.3d 1169 (9th Cir. 2015), and *Association of Irritated Residents v. U.S. Envtl. Prot. Agency* ("*AIR*"), 10 F.4th 937 (2021)).  In reply, the Air District contends that the portions of the prior Ninth Circuit decisions on which plaintiffs rely were not the holdings of those cases and do not have precedential effect for purposes of the Air District's motion.  *See* Doc. 13 ("Reply").

## II.  <u>Legal Standard</u>

A party may move to dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1).  *Cf. City & Cnty. of San Francisco v. U.S. Dep't of Transp.*, No. C 12–0711 RS, 2013 WL 772652, at *3 (N.D. Cal. Feb. 8, 2013), *aff'd* 796 F.3d 993 (9th Cir. 2015) (dismissing under 12(b)(1) complaint that attempted to invoke jurisdiction based on a citizen-suit provision that did

not authorize suit against governmental entities).  A motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or factual.  *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1028 (9th Cir. 2023) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  Here, the Air District brings a facial attack.  *See* MTD.

"In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

**III.    Discussion and Analysis**

The relevant portion of the CAA's citizen-suit provision provides:

> [A]ny person may commence a civil action on his own behalf—
>
> (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation[.]

42 U.S.C. § 7604(a)(1).

The Air District argues that this provision does not authorize a suit against a government agency in its capacity as a regulator.  *See generally* MTD.  The Air District relies heavily on *Sierra Club v. Korleski*, 681 F.3d 342 (6th Cir. 2012), which reached this conclusion, and *Bennett v. Spear*, 520 U.S. 154 (1997), which held that the Endangered Species Act's citizen-suit provision did not authorize a suit against the federal government in its capacity as a regulator.  MTD at 15–24.  But the Ninth Circuit's later decision in *Committee for a Better Arvin v. U.S. E.P.A.* ("*Arvin*"), 786 F.3d 1169 (9th Cir. 2015), is inconsistent with the Sixth Circuit's decision in *Korleski*.

6

In *Arvin*, the petitioners challenged the EPA's approval of California's SIP in part on the grounds that an SIP must be enforceable pursuant to section 7410(a)(2)(A) of the CAA, and that California's SIP did not establish enforceable commitments for the state. *Arvin*, 786 F.3d at 1173. In the SIP, California made certain commitments to propose and adopt emission control measures.[4] *Id.* at 1179–82. The petitioners asserted that these commitments were unenforceable. *Id.* at 1179. The respondent, the EPA, argued that the commitments were enforceable against California under the CAA's citizen-suit provision, and expressly argued that "the only contrary persuasive authority . . . , *Sierra Club v. Korleski*, was wrongly decided to the extent it bars CAA section [7604(a)(1)] citizen suits against States that fail to fulfill obligations imposed by" SIPs. Br. for Resp'ts at 73, *Comm. for a Better Arvin v. U.S. E.P.A.*, No. 11-73924 (Sept. 7, 2012). The EPA explained that the CAA's citizen-suit provision "differs significantly from the Endangered Species Act [provision] at issue in *Bennett* [*v. Spear*, 520 U.S. 154 (1997)] . . . [and EPA] therefore maintain[ed] that California *is* subject to [§ 7604(a)(1)] citizen suits if it fails to fulfill one or more" of the SIP's requirements. *Id.* at 73–74. The Air District intervened in the *Arvin* case and invited the court to reach the opposite conclusion. *See* Br. for Resp't-Intervenor at 54–57, *Comm. for a Better Arvin v. U.S. E.P.A.*, No. 11-73924 (Oct. 4, 2012) (addressing *Korleski* and arguing that "[e]ven if this Court were to determine that the holding in *Korleski* is correct, such a decision would not" lead to the result the petitioners urged).

The Ninth Circuit found that the EPA's approval of certain of California's state mechanisms and other control measures in the SIP did not violate the CAA, as they were "enforceable commitments as the CAA requires." *Arvin*, 786 F.3d at 1173.[5] The court based that holding, in part, on its finding that citizens could bring an action under the CAA's citizen-suit provision to compel California to honor its SIP commitments. *Id.* at 1180–82. The *Arvin* court

---

[4] The court recognized that, as a practical matter, "state commitments to propose and adopt emission control measures require government agency action [as a regulator], not action by the public" or by regulated entities under the specific provisions of California's SIP. *See id.* at 1179–80.

[5] In *Arvin*, the court also found that, in other respects not relevant for purposes of the present motion, the EPA violated the CAA. *Arvin*, 786 F.3d at 1173.

stated: "We [] conclude that Petitioners can seek timely remedies under the CAA if California does not fulfill its commitments to propose and adopt emission control measures or to achieve aggregate emission reductions." *Id.* at 1181–82.

Noting that 42 U.S.C. § 7604(a) "authorize[s] citizen suits to obtain remedies for, among other things, violations of 'emission standard[s] or limitation[s],'"[6] the *Arvin* court found:

> If California does not fulfill a commitment to propose and adopt emission control measures or to achieve aggregate emission reductions, the public can seek a remedy for such specific violations. . . .
>
> Because California's commitments to propose and adopt emission control measures and to achieve aggregate emission reductions are neither aspirational goals nor unenforceable as a matter of discretion or practicality, we conclude that these commitments are enforceable emission standards or limitations, and that EPA's approval of them into the Plans was not arbitrary or capricious and did not violate the CAA.

*Id.* at 1182.  The *Arvin* decision is thus premised on the finding that certain commitments in the SIP that required action from the government in its capacity as a regulator were "enforceable 'emission standards or limitations,'" enforceable through citizen suits under § 7604(a)(1).  *Id.* at 1181–82.[7]

In *Association of Irritated Residents v. U.S. Envtl. Prot. Agency* ("*AIR*"), 10 F.4th 937, 947 (2021), the petitioner challenged, among other things, the EPA's approval of California's Enhanced Enforcement Activities Program, which created an additional emissions limitation. "The EPA acknowledge[d] that the program must be enforceable to be incorporated into the plan," and "argue[d] that those components of the program that were approved as part of the plan are indeed enforceable." *Id.*  The court agreed that the measures identified in the program were enforceable, as it found that any "failings may be challenged either by the EPA *or by citizens*," and that "[t]he program [wa]s therefore consistent with the statutory requirement that measures

---

[6] The quoted phrase "emission standard[s] or limitation[s]" is from section 7604(a)(1).

[7] The court also distinguished the citizen action enforcement means available against the governmental regulator under § 7604(a)(1) from the separate enforcement means available to the EPA under § 7509. *Id.* at 1182.

included in the plan be enforceable." *Id.* (emphasis added) (citing *Arvin*, 786 F.3d at 1177; 42 U.S.C. §§ 7509, 7604(a)).

The conclusion in *Arvin* and *AIR* that citizens could pursue an enforcement action under § 7604(a)(1) if the State failed to perform its regulatory duties were necessary components of the decisions and not dicta. "A statement is dictum when it is 'made during the course of delivering a judicial opinion, but . . . is unnecessary to the decision in the case and [is] therefore not precedential.'" *Cretacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004) (quoting *Best Life Assur. Co. v. Comm'r,* 281 F.3d 828, 834 (9th Cir. 2002)). "The line is not always easy to draw, however, for 'where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.'" *Id.* (quoting *United States v. Johnson,* 256 F.3d 895, 914 (9th Cir. 2001) (Kozinski, J., concurring)).

Both *Arvin* and *AIR* acknowledged that section 7410(a)(2)(A) mandates that a SIP's requirement be enforceable, and the resolution of the cases turned in part on whether the requirement that California take certain regulatory actions was enforceable through a citizen suit. *See Arvin*, 786 F.3d at 1181; *AIR*, 10 F.4th at 974. In both cases, the relevant provisions were found "consistent with the statutory requirement that measures included in the plan be enforceable," *Air*, 10 F.4th at 947, because they could be challenged by citizens under section 7604(a)(1). The conclusion that section 7604(a)(1) provides citizens with a cause of action against the governmental regulatory authority was necessary to the decisions and is binding on this Court.

The Air District argues that the Ninth Circuit's opinions in *Arvin* and *AIR* did not expressly examine all the reasons the Sixth Circuit considered in its holding in *Korleski* that § 7604(a)(1) does not enable citizens to bring a suit challenging a governmental agency's failure to regulate in accordance with its SIP. *See* Reply 10–11. The Air District also argues that the Ninth Circuit's conclusions that an action under § 7604(a)(1) would be permitted against a government regulator was merely an "implicit assumption" in the opinion that this Court is not

9

bound to follow.  *Id.*  This argument is unpersuasive.

*Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926 (9th Cir. 2007), cited by the Air District, provides an example of when a statement in a judicial opinion is merely an "implicit assumption" that constitutes dictum.  There, the Ninth Circuit held that communications directed to a debtor's attorney are not actionable under the Fair Debt Collection Practices Act.  *Id.* at 936.  The dissent argued that the court was bound by *Heintz v. Jenkins*, 514 U.S. 291 (1995), to reach the opposite conclusion.  *Id.* at 944 (Fletcher, J., concurring in part and dissenting in part).  In response, the majority pointed out that *Heintz* considered only one issue: "whether the term 'debt collector' in the Act applies to a lawyer who regularly, through litigation, tries to collect consumer debts."  *Id.* at 937 (quoting *Heintz*, 514 U.S. at 292).  The court explained:

> [T]he offending communication in that case happened to be sent to a debtor's counsel, *id.* at 293, but the question on review was the entirely different matter of whether a law firm engaged in collecting a debt is a debt collector for purposes of the Act. The identity of the *recipient* was mentioned in passing; neither the Court nor the parties addressed the issue now before us. We are not required to follow what amounts to, at most, an implicit assumption, because "[s]uch unstated assumptions on non-litigated issues are not precedential holdings binding future decisions."

*Id.* at 937–38.

Along similar lines, the Air District cites *Cooper Industries, Inc. v. Aviall Serv., Inc.*, for the proposition that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."  543 U.S. 157, 170 (2004) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)).  *Cooper* explained that *Key Tronic Corp. v. United States*, 511 U.S. 809 (1994), was not binding authority on the issue of whether a potentially responsible party may bring an action to recover costs under section 107(a)(4)(B) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA").  *Id.*  The issue presented in *Key Tronic* was whether certain attorney's fees were "necessary costs of response" within the meaning of section 107(a)(4)(B).  511 U.S. at 818–821.  *Cooper* explained that although Key Tronic was a potentially responsible party, the court did not once "address the relevance, if any, of Key Tronic's status as a [potentially responsible party]."  *Cooper*, 543 U.S. at 170.  Instead, *Key*

*Tronic* considered only the narrower question of whether attorney's fees were recoverable by a party who brings an action to recover costs under section 107(a)(4)(B). *See Key Tronic*, 511 U.S. at 811, 814–21. Therefore, the Court found that *Key Tronic* did not bind future courts on the broader question of whether a potentially responsible party could bring a cost recovery action under section 107(a)(4)(B).

In contrast, in both *Arvin* and *AIR* the court based its decisions, in part, on the finding that the measures at issue would be enforceable by a citizen suit against the government regulator pursuant to § 7604(a)(1). *Arvin*, 786 F.3d at 1181–82 (holding that "if California does not fulfill its commitments" under the SIP "the public can seek a remedy for such specific violations" because those commitments are "enforceable emission standards or limitations" within the meaning of section 7604(a)(1)); *AIR*, 10 F.4th at 947 (noting that the parties disputed whether the SIP's requirements were enforceable, and holding that "if the chosen program is not implemented [by California], those failings may be challenged either by the EPA or by citizens" (citing 42 U.S.C. §§ 7509, 7604(a)). This is essentially the same issue that the Air District presents in its motion to dismiss.

The findings in *Arvin* and *Air* were more than just "unstated assumptions on non-litigated issues," *Guerrero*, 499 F.3d at 937, and were more than just "questions lurking in the record, neither brought to the attention of the court nor ruled upon," *Cooper Ind.*, 543 U.S. at 170. Rather, in *Arvin*, the respondent analyzed *Korleski* in its brief, argued that that decision should not be followed, and argued that "California *is* subject to [§ 7604(a)(1)] citizen suits" and that § 7604(a)(1) provided a private right of action to enforce the state's regulatory commitments. *See* Br. for Resp'ts at 73, *Comm. for a Better Arvin v. U.S. E.P.A.*, No. 11-73924 (Sept. 7, 2012). The Air District intervened in that case and invited the court to reach the opposite conclusion. *See* Br. for Resp't-Intervenor at 54–57, *Comm. for a Better Arvin v. U.S. E.P.A.*, No. 11-73924 (Oct. 4, 2012) (discussing *Korleski* and arguing that "[e]ven if this Court were to determine that the holding in *Korleski* is correct, such a decision would not" lead to the result the petitioners urged).

The Air District points out that, in concluding that section 7604(a)(1) authorized citizen suits against the government regulator acting in a regulatory capacity, *Arvin* and *AIR* did not

11

expressly consider all the contrary arguments the Air District raises in its motion.  Relying on *Korleski*,[8] the Air District makes several arguments based on the plain language of the CAA: First, the CAA uses the term "violation" in section 7604(a)(1), then uses the same term in other sections of the statute in contexts that refer only to actions by polluters, not regulators.  MTD at 17–21.  Second, in another section of the Act, which lists actions that the EPA may take if a state fails to implement a part of its SIP, the CAA uses the term "deficiency"—not "violation"—to describe a state's failure to regulate.  *Id.* at 21–22.  Third, it emphasizes that interpreting § 7604(a)(1) to permit an action against a state regulator is inconsistent with the Clean Air Act's sanction scheme because, if a state fails to implement its SIP, EPA may not compel the state to act, but rather, may only induce the state to act by requiring offsets from sources within the state or by imposing a prohibition on the Secretary of Transportation's disbursement of highway funds to the state.  *See id.* at 22–24 (citing 42 U.S.C. § 7509(b)).

The court recognizes these arguments, but this court is not considering this issue on a blank slate and, unlike *Arvin* and *AIR*, *Korleski* is not binding precedent in this circuit.  The Air District cites cases like *Brecht v. Abrahamson*, 507 U.S. 619 (1993), which explain that a court is "free to address [an] issue on the merits" if no higher court has "squarely addressed the issue."  Reply 9.  But, as addressed above, this Court's reading of *Arvin* and *AIR* is that they did address the issue of whether 7604(a) authorizes a citizen suit against a government regulator to enforce its compliance with an "emission standard or limitation."

In sum, § 7604(a)(1) provides a cause of action against the Air District for its alleged violation of California's SIP.

///

///

///

///

---

[8]  The Air District also relies on *Bennett v. Spear*, 520 U.S. 154, 171–174 (1997), which held that the Endangered Species Act's citizen suit provision does not authorize actions against a regulator for its failure to regulate.  *See* MTD at 21.  But the Ninth Circuit's decisions in *Arvin* and *AIR* were decided well after *Bennett*, and *Bennett* does not concern the CAA or its citizen suit provision at § 7604(a)(1).

## IV.    Conclusion and Order

Based upon the foregoing, the Air District's motion to dismiss, Doc. 8, is DENIED.

IT IS SO ORDERED.

Dated:    July 16, 2026

_____
UNITED STATES DISTRICT JUDGE

13